Argued and submitted May 17, resubmitted In Banc November 8, 1989, judgment for
Wetter reversed and remanded; otherwise affirmed January 17, reconsideration denied
March 14, petition for review denied April 3, 1990 (309 Or 645)

MANN,
*Appellant,*

*v.*

WETTER et al,
*Respondents.*

(A8709-05598; CA A49693)

785 P2d 1064

J. William Savage, Portland, argued the cause for appellant. With him on the briefs was Rieke, Geil & Savage, P.C., Portland.

Christopher C. S. Blattner, Portland, argued the cause for respondents. With him on the brief were Mitchell A. Goldstein, and Joseph, Babener & Carpenter, Portland.

DEITS, J.

Buttler, J., dissenting in part.

## DEITS, J.

Plaintiff, as personal representative of the estate of Bruce E. Virkler, brought this wrongful death action against defendants, alleging negligence in conducting a scuba diving instructional program. The trial court granted defendants' motion for summary judgment, based on a release signed by Virkler. Plaintiff appeals. We reverse as to defendant Wetter.

Horizon Water Sports, Inc. (Horizon) operates a diving school and is a member of NASDS, a nationwide standardized scuba instruction program. Horizon employed Wetter as a NASDS certified diving instructor. Virkler enrolled in one of Horizon's diving instruction programs. He completed a Total Information Card form, supplied by NASDS. The form requires personal and medical information and includes a clause respecting liability. The clause includes a release that states in pertinent part:

> "[T]he Undersigned does for him/herself, his/her heirs, executors, administrators and assigns hereby release, waive, discharge and relinquish any action or causes of action, aforesaid, which may hereafter arise for him/herself for his/her estate, and agrees that under no circumstances will he/she or his/her heirs, executors, administrators and assigns prosecute, present any claim for personal injury, property damage or wrongful death *against N.A.S.D.S. or its member school, or any of its officers, agents, servants or employees* for any of said causes of action, whether the same shall arise by the negligence of any of said persons, or otherwise. IT IS THE INTENTION OF THE ABOVE NAMED STUDENT BY THIS INSTRUMENT, TO EXEMPT AND RELIEVE N.A.S.D.S. AND ITS MEMBER SCHOOL FROM LIABILITY FOR PERSONAL INJURY, PROPERTY DAMAGE OR WRONGFUL DEATH CAUSED BY NEGLIGENCE." (Emphasis supplied.)

After Virkler had completed six to eight weeks of classroom and pool instruction, he participated in a required open-water certification dive, which was conducted by Horizon and supervised by Wetter. He died during the dive.

Plaintiff asserts that the trial court erred in granting defendants' motion for summary judgment. She first contends that the release should be held invalid as a matter of public policy because of the parties' unequal bargaining power, particularly because decedent was asked to sign the release after

he had already attended some of the classes, had paid his fees and was fully committed to the program.

■　　Although agreements to limit liability are not favored, neither are they automatically void. An agreement limiting liability is governed by principles of contract law and will be enforced in the absence of some consideration of public policy derived from the nature of the subject of the agreement or a determination that the contract was adhesionary. *K-Lines v. Roberts Motor Co.*, 273 Or 242, 248-254, 541 P2d 1378 (1975). The Supreme Court has stated:

> "There is nothing inherently bad about a contract provision which exempts one of the parties from liability. The parties are free to contract as they please, unless to permit them to do so would contravene the public interest." *Irish & Schwartz Stores v. First National Bank,* 220 Or 362, 375, 349 P2d 814 (1960).

■ ■　　Here, there are no public policy considerations that prevent a diving school from limiting liability for its own negligence. The diving school does not provide an essential public service, as was the case in *Real Good Food v. First National Bank,* 276 Or 1057, 557 P2d 654 (1976), where the court held that a bank could not limit its liability for the negligence of its own employes.[1] The economic advantage, if

---

[1] The dissent discusses at some length the case law concerning exemptions from liability in situations involving bailments. It points out that, in such cases, a total exemption from liability has been held invalid. It then concludes that "there is no reason why those rules should not apply to the agreement in this case." However, the dissent ignores the fact that the holding of the invalidity of limitations of liability in the bailment cases was based on the fact that the bailee was performing an essential public service. *Real Good Food v. First National Bank, supra,* cites the *Restatement (Second) Torts,* § 496b, *comment g* at 567-68 (1965):

> "Where the defendant is a common carrier, an innkeeper, a public warehouseman, a public utility, or is otherwise charged with a duty of public service, and the agreement to assume the risk relates to the defendant's performance of any part of that duty, it is well settled that it will not be given effect. Having undertaken the duty to the public, which includes the obligation of reasonable care, such defendants are not free to rid themselves of their public obligation by contract, or by any other agreement. * * *"

It then concludes that: "Banks, like common carriers and utility companies, perform an important public service * * *." 276 Or at 1061.

This case does not involve a business which performs an essential public service. Other jurisdictions that have considered the issue have held that businesses that provide recreational activities are not providing essential public services. *See Madison v. Superior Court,* 203 Cal App 3d 589, 250 Cal Rptr 299 (1988)(scuba diving); *Jones v. Dressel,* 623 P2d 370 (Colo 1981)(flight school); *Blide v. Rainier Mountaineering, Inc.,* 30 Wash App 571, 636 P2d 492 (1982) (mountain climbing); *Hewitt v. Miller,* 11 Wash App 72, 521 P2d 244 (1974)(scuba diving); *Milligan v. Big Valley Corp,* 754 P2d 1063 (Wyo 1988)(ski racing at resort).

any, that a small business that provides a non-essential service may have over its customers will not create unequal bargaining power, because the customers have a multitude of alternatives. *K-Lines v. Roberts Motor Co., supra,* 273 Or at 252-53; *see Oregon Bank v. Nautilus Crane & Equip. Corp,* 68 Or App 131, 142, 683 P2d 95 (1984). Further, although decedent may not have signed the release until after he had paid for and started the program, that did not create unequal bargaining power between the parties that would require us to invalidate the release. He remained free not to continue the diving program. *See Hewitt v. Miller, supra* n 1.[2]

Plaintiff also argues that the trial court erred when it granted summary judgment for Wetter, because, as a matter of law, the language of the release did not include him. Wetter contends that the language of the release clearly did include him.

■■ As a general rule, the construction of a contract is a question of law for the court. The exception to that rule is that, if the language in a contract is ambiguous, evidence may be admitted as to the intent of the parties, and the determination of the parties' intent then is a question of fact. *Timberline Equip. v. St. Paul Fire & Mar. Ins.,* 281 Or 639, 643, 576 P2d 1244 (1978). However, whether the language of a contract is ambiguous is a question of law for the court. A contract provision is ambiguous if it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is clear enough to preclude doubt by a reasonable person. *Deerfield Commodities v. Nerco, Inc.,* 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985).

■■ The disputed language in the release agreement provides that the release applies to actions "against N.A.S.D.S. or its member school or any of its officers, agents, servants or employees." The reference to "its officers, agents, servants or

---

[2] The dissent concludes that the date that the release was signed is a material issue of fact because, if it was not signed at the time when the decedent paid for the course, there would be no consideration for the release agreement and, thus, it was not "fairly and honestly" made. However, plaintiff does not argue that the agreement lacked consideration because of the possible delay in signing it and, as we have concluded, the delay did not create unequal bargaining power between the parties, because the decedent was free not to continue the course.

employees" could be read to refer to the officers, agents, servants or employes of NASDS or to those of Horizon. The language of the agreement is ambiguous, and so the parties are entitled to present evidence as to the intention of the drafters and of those who executed the release agreement. Accordingly, summary judgment in favor of Wetter was error.

Plaintiff also contends that the summary judgment in favor of Wetter should not have been granted, because there was a material question of fact whether Wetter was an officer, agent, servant or employe of NASDS. We agree that, depending on the construction of the language of the release agreement, that may be a material question of fact. Defendant presented evidence that Wetter was a nonvoting member of NASDS. Although it may not necessarily follow that, because of that, he may be an officer, agent, servant or employe of NASDS, plaintiff is entitled to present evidence concerning Wetter's status with NASDS.

Judgment for respondent Wetter reversed and remanded; otherwise affirmed.

**BUTTLER, J.,** dissenting in part.

I concur in the disposition as to Wetter. However, I would also reverse and remand as to him and Horizon, because I believe that there is genuine issue of material fact as to when the agreement exempting either or both of them from liability for negligence was signed.

Although there are no Oregon cases directly in point, there are cases dealing with agreements to exempt a bailee from liability. A review of those cases leads me to conclude that a provision totally exempting a bailee from liability is not valid in Oregon, although a limitation on liability may be. In *Pilson v. Tip-Top Auto Co.,* 67 Or 528, 136 P 642 (1913), the defendant, the bailee of the plaintiff's automobile, asserted that it had been agreed by the plaintiff and the defendant that the defendant assumed no liability whatever for the automobile's safety, preservation or redelivery, except for its own wilful and intentional misconduct. The court, holding that the defendant could be held liable for its ordinary negligence, stated:

> "It is the better rule that a bailee for hire cannot by contract so limit his responsibility to the bailor as not to be liable

for his own negligence or the negligence of his agents and servants * * *." 67 Or at 535. (Citations omitted.)

That language was quoted with approval in *Simms v. Sullivan,* 100 Or 487, 493, 198 P 240 (1921).

In *Voyt v. Bekins Moving & Storage,* 169 Or 30, 119 P2d 586, 127 P2d 360 (1941), the court held that, although a bailee may not *exempt* himself from liability for his own negligence, he may limit his liability (for example, to $10 per 100 pounds), *if* such an agreement was "fairly and honestly made as the basis of the defendant's charges and responsibility." 169 Or at 52. The court concluded that no such agreement had been fairly and honestly made, because the bill of lading containing the limitation was not sent to the plaintiff until after her goods had been turned over to the defendant and the storage charges paid.

*Irish & Swartz Stores v. First Nat'l Bk.,* 220 Or 362, 349 P2d 814 (1960), was thought to be a leading case on the subject, until it was, essentially, overruled by *Real Good Food v. First National Bank,* 276 Or 1057, 557 P2d 654 (1976). Both cases involved a night depository agreement with the defendant bank in which it was stated that the night depository was provided without compensation as a convenience to, and at the risk of, the depositor and that the bank would not be responsible for any loss. In *Irish & Swartz,* the court referred to the language quoted above from *Pilson v. Tip-Top Auto Co., supra,* and then stated:

"We do not think that the foregoing statement was intended as the pronouncement of a universal rule applicable to every bailment irrespective of its character." 220 Or at 375.

The court went on to say that the parties are free to contract as they please, unless to permit them to do so would contravene the public interest. The court distinguished between a bailee who performs services for which the public has a substantial need and those who do not. It went on to say, however, that it was not necessary to decide into which category the business of furnishing a night depository falls, because of the "peculiar character of the bailment bargained for in the present case," which warranted the recognition of an enforceable exculpatory clause. 220 Or at 377.

In *Real Good Food v. First National Bank, supra,* the

court held that the exemption from liability recognized in *Irish & Swartz* was valid only to the point where the deposit bag has actually entered the chute of the depository so that it cannot be retrieved thereafter from the exterior of the depository. However, once the bag has been deposited, the relationship of bailor and bailee has been established and "the bank cannot contract away liability for loss as the result of negligence or dishonesty by its own employees and has the burden to prove that any loss was not the result of such negligence or dishonesty." 276 Or at 1064.

From that cursory review, it appears that, with respect to bailments, at least, a total *exemption* from liability for negligence would be invalid, although a *limitation* of liability may be valid if it is fairly and honestly made at the time of the bailment, unless, perhaps, the bailee performs services for which the public has a substantial need.

I perceive no reason why those rules should not apply to the agreement in this case. The clause does not provide total immunity; rather, it limits the exemption from liability to negligence claims. However, I would hold that, in order for such a provision to be enforceable in a given case, it must have been "fairly and honestly made" at the time when the contract for services was made. *Voyt v. Bekins Moving & Storage, supra.* Here, there is evidence that plaintiff had paid for the scuba diving course in full and, apparently, had rented the scuba diving equipment from defendant and that it was not until some time later that he was presented with the agreement exempting defendant from liability. If those facts are found, the contract does not come within the requirement of *Voyt.* In other words, there would have been no consideration for the agreement, because, on the facts that we have before us, a jury could find that defendant had already agreed to provide the scuba diving lessons and there is no evidence that defendant offered to refund the amounts paid by plaintiff if plaintiff did not wish to sign the agreement exempting it from liability.[1] There are, therefore, genuine issues of material fact,

---

[1] The majority is correct in stating that plaintiff frames her argument in terms of decedent's having unequal bargaining power at the time he was asked to sign the release. It disposes of that argument by stating that there was no unequal bargaining power, because decedent could have walked away from the program. 100 Or App at 188. That is no answer; in fact, it demonstrates the inequality of bargaining power at that time: To avoid signing the release, decedent had to forfeit the money he had paid, and by signing it, he received nothing in addition to what he already had, *i.e.*, there was no consideration for his signing. Therefore, it is not fair to say that the question is not raised.

precluding the granting of summary judgment.

Accordingly, I would reverse and remand as to both defendants.