Argued and submitted January 27, reversed and remanded June 23, reconsideration denied August 18, petition for review denied September 21, 1993 (317 Or 583)

Stephanie HAUGE,
*Appellant,*

*v.*

Joost VANDERHAVE,
dba Green Villa Farms,
*Respondent.*

(91P-1138; CA A73579)

854 P2d 1002

Jeffrey B. Wilkinson, Portland, argued the cause for appellant. With him on the brief was Stafford Frey Cooper & Stewart, Portland.

Robert L. Engle, Woodburn, argued the cause for respondent. With him on the brief was Engle & Schmidtman, Woodburn.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

Leeson, J., dissenting.

**ROSSMAN, P. J.**

Plaintiff appeals a summary judgment for defendant. Having reviewed the record in the light most favorable to plaintiff to determine whether there is any genuine issue of material fact and whether defendant is entitled to judgment as a matter of law, *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978), we reverse.

In April, 1989, plaintiff, a grass seed farmer, began negotiating to purchase a 130-acre parcel of farmland. The property was subject to defendant's lease, which was to expire on December 31, 1989. Plaintiff did not want to wait that long to take possession, so her agent, Cook, met with defendant to discuss an "early possession agreement." At that time, 50 of the acres were unplanted, and the remaining 80 acres were planted with ryegrass. The parties agreed orally that defendant would release the unplanted acreage immediately, and would relinquish possession of the remaining 80-acre parcel "upon completion of harvest." In return, plaintiff agreed to pay the balance of defendant's lease obligation for the 50-acre parcel.

On April 25, 1989, plaintiff executed an earnest money agreement to purchase the property.[1] Defendant released the 50 acres and plaintiff paid the remaining rent for that parcel, as agreed. On July 13, 1989, defendant finished harvesting the ryegrass seed on the 80-acre parcel. The next day, Cook contacted defendant and confirmed that the crop had been harvested. Defendant said that he would be ready to release possession when he finished discing the ground to destroy the root stock. Cook demanded that the discing cease. Defendant refused, apparently because he was growing a licensed brand of perennial ryegrass, Manhattan II, and was contractually bound to destroy the root stock before releasing possession to anyone not licensed to grow Manhattan II. After discing, he released the property.

Plaintiff sued defendant for trespass, breach of the early release agreement and breach of the covenant of good faith and fair dealing. After considering the parties' affidavits, depositions and pleadings, the trial court granted

---

[1] The earnest money agreement provided that possession would be "given to buyer upon harvest of growing crop with approval of tenant."

defendant's motion for summary judgment on all three claims. It held:

> "There existed no ambiguity in the terms of [the parties' early release] agreement. The term 'harvest' as used in that agreement, applied only to the time at which the lease would terminate, and not to the condition of the land or root stock at the time of delivery."

Plaintiff challenges that ruling.

The trial court is to decide as a matter of law whether a contract term is ambiguous, *Mann v. Wetter*, 100 Or App 184, 188, 785 P2d 1064, *rev den* 309 Or 645 (1990), and we review that decision for errors of law. If a term is ambiguous, and the parties submit competent evidence regarding their intentions, the meaning of the ambiguous term becomes a question of fact for the jury to resolve. *Bartlam v. Tikka*, 50 Or App 217, 220, 622 P2d 1133, *rev den* 290 Or 853 (1981). If the terms are unambiguous,[2] the construction of the contract is a legal question to be decided by the court. *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978).

Although the parties employed the term "harvest" during their negotiations, it is undisputed that they did not discuss its meaning. Cook swore that he

> "understood the term harvest * * * to mean that *upon removal of the seed crop* [defendant] would relinquish possession of the entire 80-acre parcel, including the root stock. * * * The term harvest, as used in the farming industry, has never meant or implied the destruction of the stock of a perennial plant.[3] 'Harvest' refers only to the removing of the fruit, seed, or produce of the land." (Emphasis supplied.)

Defendant swore that "[h]arvest to me means the — the time frame of harvesting the crop."

---

[2] "A term is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person." *Oakridge Cablevision v. First Interstate Bank*, 65 Or App 640, 646, 673 P2d 532 (1983).

[3] In his affidavit, Cook said that he did not know that defendant was growing a protected variety of perennial ryegrass on the 80-acre parcel. He stated that, while he is "aware that such protected varieties of seeds exist, there was nothing about this transaction which led me to believe or even suspect that this particular grass stock was a protected variety."

We conclude that, under the circumstances, the meaning of the term "harvest" is susceptible to more than one reasonable interpretation.[4] Therefore, it is ambiguous. *Carlson v. Reservation Ranch*, 118 Or App 512, 515, 848 P2d 616 (1993); *Poirier v. United Grocers, Inc.*, 110 Or App 592, 595, 824 P2d 1158, *rev den* 313 Or 210 (1992). The trial court erred in holding otherwise. Because the meaning of the ambiguous term presents a genuine issue of material fact, defendant was not entitled to summary judgment.[5]

Reversed and remanded.

**LEESON, J.,** dissenting.

This case involves an oral contract entered into while plaintiff's agent was standing in a grass seed field with defendant. Defendant's lease entitled him to remain on the 80-acre parcel until December 31, 1989. Plaintiff wanted to take possession of the entire 130 acres before December 31. Her agent, therefore, promised to refund prorated rent for any unused portion of the lease when defendant quit the land upon completion of harvest. The phrase "upon completion of harvest" in their agreement referred only to *when* defendant was to release the land, not what was to be released. Similarly, no reasonable person could find that the parties intended their oral agreement to create a rigid time table under which defendant would become a hold-over tenant and a trespasser within 24 hours of gathering the last of his crop. Any claim plaintiff may have against defendant does not derive from the early release agreement. The trial court properly granted defendant's motion for summary judgment.

Accordingly, I dissent.

---

[4] As this record shows, "harvest" could refer to the act of severing a crop from the ground or digging up the roots, or it could refer to "sometime this summer when the grass seed is ripe."

[5] Because of our conclusion, we need not address plaintiff's other arguments.