## Jeffrey B. WIHTOL,
*Appellant,*

*v.*

## Christopher LYNN
## and Angela Lynn,
*Respondents.*

## 0402-01208; A126446

146 P3d 365

Jeffrey B. Wihtol argued the cause for appellant *pro se*. On the briefs were Erin K. MacDonald and Law Offices of Jeffrey B. Wihtol.

William H. Sumerfield argued the cause for respondents. With him on the brief was Phillips Reynier & Sumerfield.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Schuman, Judge.*

ARMSTRONG, P. J.

_____

* Schuman, J., *vice* Richardson, S. J.

## ARMSTRONG, P. J.

Plaintiff appeals a judgment in a declaratory judgment action to enforce a contract. Plaintiff seeks a declaration that the enhanced-fee clause in the contract under which plaintiff represented defendants in a medical malpractice action is enforceable. The trial court granted summary judgment to defendants and entered a declaration that the enhanced fee clause is unenforceable. We conclude that the trial court erred in granting summary judgment to defendants and in denying summary judgment to plaintiff. We therefore reverse and remand with instructions to enter summary judgment for plaintiff.

■     When a trial court grants a motion for summary judgment and denies a cross-motion for summary judgment, we can review both rulings on appeal. *See, e.g., Martin v. City of Tigard,* 335 Or 444, 449 n 4, 72 P3d 619 (2003). We review the record to determine if there are genuine issues of material fact, and, if there are none, we decide which party is entitled to judgment as a matter of law. ORCP 47 C; *Powell v. Bunn,* 185 Or App 334, 338, 59 P3d 559 (2002), *rev den,* 336 Or 60 (2003).

The parties' dispute arose from a medical malpractice action in which plaintiff represented Christopher and Angela Lynn, defendants here, concerning the death of their son at a Hood River hospital.[1] Plaintiff took that case on a contingent-fee basis under a written fee agreement that identified the Lynns as clients, individually and as personal representatives of their son's estate. The two-page agreement provides, in part:

"1.   Client hereby retains Attorney for representation of Client with regard to the wrongful death of Shane Charles Lynn on or about April 17, 2000.

"2.   FEES. In consideration of the services rendered by Attorney, it is agreed that the compensation and fees of the

---

[1] To avoid confusion because the Lynns are defendants in this dispute, we refer to them by proper name to recount the relevant facts of the underlying malpractice action in which they were the plaintiffs. "The defendants" in our summary of the facts refers to the medical providers who were the defendants in that original action.

Attorney will be the following percentage of the gross of any recovery collected for the Client by settlement, judgment or compromise:

"One third (33⅓%) of the gross recovery before a notice of appeal is filed. In the event an appeal is filed, the percentage increases to two-fifths (40%) from 33⅓%.

"A.    Recovery is defined to mean the total economic benefit obtained by Client resulting from Attorney's efforts.

"B.    In the event of a structured settlement, the gross recovery amount shall be the present value (cost) of all present and future lump sum and periodic payments. Attorney may elect to receive all or a portion of his fees as periodic payments. If the Attorney makes that election, then Attorney will do so prior to any settlement, and the present value of the attorney fees * * * will not exceed the above percentages of the gross recovery."

(Underscoring in original.)

The case involved multiple defendants and claims related to wrongful death and personal injury. Plaintiff's filing of an interlocutory notice of appeal in pursuit of some of the claims led to this fee dispute.[2] The original defendants were a hospital, an obstetrician, and a nurse midwife (the medical negligence defendants), based on plaintiff's theory that the nurse might have negligently inserted a catheter that caused fatal blood loss through the placenta during delivery. Plaintiff sought discovery of the placental tissue for the Lynns' medical expert to examine but learned that the medical negligence defendants had ordered, without the Lynns' consent, placental testing by another clinic and doctor that had destroyed some tissue. The remaining tissue did not support or preclude a showing of placental injury. Plaintiff added claims against the medical negligence defendants and the testing clinic and doctor (collectively, the placental-injury claims) for intentional and negligent spoliation of material evidence and conversion of placental tissue, and a class action claim for injunctive relief to prevent future destructive testing. He told the Lynns that the new claims and the new

---

[2] Plaintiff filed another notice of appeal that is not at issue here because he does not base his claim for an enhanced fee on that filing.

defendants could help to maximize the value of their negligence claims by undermining the defense of a lack of physical evidence of placental injury.

The placental-injury claims were novel, and the trial court dismissed them for various reasons through entry of an ORCP 67 B judgment for the defendants. Plaintiff recommended that the Lynns appeal the judgment, and he filed a notice of appeal on their behalf. The Lynns did not object to that filing, ask plaintiff not to appeal, question when appeals can occur in a civil suit, or question the effect under their fee agreement of an interlocutory appeal.

In response to plaintiff's notice of appeal, we issued an order in July 2003 to show cause why the appeal should not be dismissed "as to defendant Providence Health System Oregon" (one of the medical negligence defendants) because the judgment did not name that defendant even though it was named as a party to the appeal. Plaintiff moved to remand the case to the trial court for entry of an amended judgment. In August 2003, we determined that the trial court had intended to enter an appealable judgment that named all parties to the dismissed claims but that the judgment was defective in form, and we therefore granted leave for the trial court to enter an amended judgment. ORS 19.270(4). In response, the trial court entered an amended judgment that added the missing defendant but also removed the ORCP 67 B language. The language of the judgment, as amended, rendered the court's ruling on the placental-injury claims no longer appealable until the remaining claims were resolved. *See* ORCP 67 B (1993), *amended by* Or Laws 2003, ch 576, § 90.[3]

In September 2003, within a few weeks of the trial court's entry of the amended judgment, plaintiff and Angela Lynn participated in a mediation with the remaining parties in the action, the medical negligence defendants. Although that mediation session was not successful, settlement discussions continued. In early October 2003, the Lynns accepted a

---

[3] In summary, the notice of appeal was defective only as to Providence Health System Oregon. In other respects, as to all the placental-injury claims against all of the other defendants, the notice of appeal was based on a judgment that was appealable when plaintiff filed the notice of appeal.

$750,000 settlement offer from the medical negligence defendants: $650,000 for their child's wrongful death and $100,000 for Angela Lynn's injuries. That settlement agreement disposed of all claims against the medical negligence defendants, including the placental-injury claims.

In support of plaintiff's motion for summary judgment in this case, two attorneys who had defended the medical negligence defendants provided affidavits about the settlement value of the placental-injury claims and plaintiff's effort to appeal the dismissal of those claims. The attorneys averred that the placental-injury claims and the additional defendants on those claims made their defense of the action more difficult because they helped explain a gap in the evidence that could have more fully supported the Lynns' theory of the case; they might create juror sympathy on the ground that the destructive testing without consent was done for the defendants' litigation advantage; and they precluded defense efforts to move venue from Multnomah County, which the defense attorneys considered to be a location favorable to medical malpractice plaintiffs. They also averred that the covenant not to sue in the settlement agreement expressly covered the placental-injury claims because the medical negligence defendants believed that the Lynns' efforts to appeal the dismissal showed their intention to continue to pursue those claims.

Plaintiff met with the Lynns to review the proposed settlement. He told them at the meeting that he expected to receive an attorney fee of 40 percent of the settlement. Although the Lynns expressed surprise at the fee, Christopher Lynn submitted a probate court petition within ten days after the meeting that sought approval of both the settlement and a 40 percent attorney fee, and Angela Lynn filed her consent in probate court to the same distribution about one week later. The probate judge signed an order approving the settlement and the 40 percent fee to plaintiff. A few days later, another attorney representing the Lynns notified plaintiff that the 40 percent fee was not acceptable to the Lynns. Plaintiff notified the probate court of the dispute and segregated the disputed fee amount in a trust account. The Lynns terminated plaintiff's services because of the fee

dispute, and plaintiff initiated this action to collect a 40 percent attorney fee from the settlement recovery.

The record before us also contains compliments by the Lynns, by their attorney in this fee dispute, and by the trial court in this case about the quality of the work that plaintiff performed in the medical negligence case. The court stated in its bench ruling that plaintiff "did a very excellent job in representing the claims and finding a settlement," and added, "I don't think I could question any of his work." Christopher Lynn stated in an affidavit in this case:

> "We do not dispute Mr. Wihtol's fee agreement. We agree that we signed it, that he performed admirably under the fee agreement, and that he is entitled to collect a fee pursuant to that agreement. We simply dispute that the relevant fee is 40%. In our view Mr. Wihtol's fee should be limited to 33-⅓% because this case settled prior to going to trial."

Plaintiff moved the trial court for summary judgment or partial summary judgment on several theories, which he renews on appeal. First, he argues that the contractual fee provision unambiguously entitles him to the enhanced 40 percent fee because he filed a notice of appeal, and that the trial court erred in ruling that the fee enhancement clause is unenforceable as against public policy. In the alternative, if the fee clause is ambiguous, plaintiff claims that defendants ratified the 40 percent fee when they signed documents authorizing the probate court to distribute his fee at that rate. As a second alternative, if the enhanced fee clause is unenforceable under these circumstances as against public policy, he argues that he has a valid claim in *quantum meruit* for the reasonable value of his services, not to exceed 50 percent of the gross recovery, with the amount of defendants' liability to be determined at trial.

■ We agree with plaintiff that there are no genuine issues of material fact in this case. Defendants applaud rather than fault plaintiff's services in the medical negligence action. They admit that the contingent-fee agreement is valid and enforceable. The defense attorneys' affidavits are undisputed evidence that plaintiff's pursuit of the placental-injury

claims enhanced the settlement value of the medical negligence action. In addition, we conclude that the meaning of the parties' contract is unambiguous, as we discuss below. "In the absence of an ambiguity, the court construes the words of a contract as a matter of law." *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (citation and internal quotation marks omitted).

■■ Defendants' argument concerning interpretation of the contract is that the phrases "before a notice of appeal is filed" and "[i]n the event an appeal is filed" should be read to exclude the filing of interlocutory appeals. In a contract dispute, a party will be entitled to summary judgment only if the governing terms of the contract are unambiguous. *Hauge v. Vanderhave*, 121 Or App 221, 854 P2d 1002, *rev den*, 317 Or 583, 859 P2d 540 (1993). We review the construction of a contract, including whether it is ambiguous—that is, whether some material term is capable of more than one plausible interpretation—as a matter of law. *Yogman*, 325 Or at 361.

■■ We do not agree that the enhanced-fee language of the contract can plausibly be read to exclude its application to interlocutory appeals. The disputed section says that the parties agree that plaintiff's compensation will be 33⅓ percent of "the gross of any recovery collected for [defendants] by settlement, judgment or compromise" if recovery occurs before a notice of appeal is filed, and 40 percent of the same basis if recovery occurs after a notice of appeal is filed. Clause 2B of the fee agreement, although itself applicable only to settlements that are "structured" to include a future payment stream, expressly sets an expectation that either percentage may apply to settlements: "In the event of a structured settlement * * * the attorney fees * * * will not exceed the above percentages of the gross recovery." Because the agreement expressly allows for either a 33⅓ percent fee or a 40 percent fee to apply to a "structured" settlement, it cannot reasonably be read to limit the higher fee to recoveries made only after a trial or after a completed or successful appeal. An ambiguous material term in a contract would create a triable issue of fact. *See, e.g., Mann v. Wetter*, 100 Or App 184, 785 P2d 1064, *rev den*, 309 Or 645 (1990). However, we conclude here, where the parties agree that a notice of appeal was filed and that defendants then achieved a recovery by settlement, that

no ambiguity exists in the intended application of the contractual provision to those facts.

Defendants also argue that the enhanced fee provision in the parties' contract should be interpreted to require plaintiff to show that the notice of appeal that he filed produced economic benefit for defendants in the medical malpractice action. We do not agree that the fee agreement impliedly requires the filing of an appeal that results in a direct economic benefit in order for the higher fee to be triggered. "In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted[.]" ORS 42.230. Clause 2A of the fee agreement merely defines "recovery" to be the total economic benefit received by the client. Clause 2 provides that, "[i]n consideration of the services rendered," the attorney's compensation will be one of the two percentage rates "of the gross of *any* recovery[.]" Furthermore, when a case settles, it is rarely possible to quantify the extent to which various factors contributed to the settlement value. The contract provides that the applicable fee applies to the total recovery. The terms "recovery" and "economic benefit" as they appear in the contract do not define or modify how or when the filing of a notice of appeal triggers the enhanced fee.

■ We conclude that the parties' contract can be plausibly read only to mean that the filing of a notice of appeal, the act that legally starts the process of an appeal, triggers the enhanced fee of 40 percent. Furthermore, the filing of a notice of appeal that is interlocutory falls within the scope of the contract's enhanced-fee clause. The applicable attorney fee may be either the lower or higher percentage of "any recovery collected * * * by settlement," depending upon whether the higher fee has been triggered by the filing of an appeal. The "recovery" that is subject to the fee is the total economic benefit that plaintiff obtained on behalf of defendants. In this case, that recovery is the monetary settlement with the medical negligence defendants that plaintiff obtained for defendants. The enhanced fee clause does not require that plaintiff establish that the filing of the notice of appeal yielded additional economic benefit. In accordance with the unambiguous terms of the contract, plaintiff filed an interlocutory appeal

by means of a notice of appeal that was within the scope of the enhanced fee clause and plaintiff subsequently obtained a $750,000 settlement for defendants that is subject to the 40 percent attorney fee.

We next consider whether the trial court properly granted summary judgment in favor of defendants. Defendants' position is that the filing of a notice of appeal as it occurred in this case cannot legally trigger the enhanced fee clause. Their argument boils down to the substance of Christopher Lynn's sworn statement above: the enhanced fee should not apply in a case that settled pretrial because a layperson expects the filing of an appeal to follow a trial. With greater specificity, defendants contend that a client would not reasonably expect an enhanced fee clause to apply after the filing of an interlocutory notice of appeal that proved premature, because the trial court later amended its judgment, and that arguably concerned matters tangential to the basic medical negligence claims, when the case settled rather than going to trial.

■ Although the trial court did not precisely adopt any of defendants' arguments, it ruled in defendants' favor by concluding that an enhanced fee clause based on an interlocutory appeal was against public policy because an attorney might manipulate the appellate process solely to enhance his fee. However, voiding a contract as against public policy requires a court to identify a source for the public policy on which it relies. Neither the trial court in its ruling nor defendants in their arguments on appeal have identified a public policy source that supports the trial court's conclusion. The Supreme Court has held that contingent attorney fee arrangements are void as against public policy only under narrow circumstances. *See, e.g., Hay v. Erwin,* 244 Or 488, 490, 419 P2d 32 (1966) (historically well settled that contingent arrangement is void in divorce proceedings because fee incentive promotes divorce and discourages reconcilation); *Fisher v. Lane,* 174 Or 438, 445-46, 149 P2d 562 (1944) (contingent pay to justice of the peace for successful outcomes adversely affected judicial neutrality). Those holdings are inapplicable to an enhanced-fee clause in a contingent-fee contract that has well accepted use in tort cases. In the event that an attorney files an appeal pretextually to enhance his

fees, an injured client is protected against such conduct by contract law doctrines, such as the implied covenant of good faith and fair dealing, as well as by the rules of professional responsibility that apply to attorneys. *See generally U.S. National Bank v. Boge*, 311 Or 550, 556-68, 814 P2d 1082 (1991) (discussing obligation of good faith and citing cases). Defendants do not argue that those principles should operate as a matter of public policy to void operation of an enhanced fee clause that can be triggered by the filing of an interlocutory appeal.

Defendants also argue that we should model our decision on *Lane v. Wilkins*, 229 Cal App 2d 315, 323, 40 Cal Reptr 309, 314 (1964), and distinguish what defendants call "core" claims from "non-core" claims, to determine when the filing of an appeal may be used to enhance a contingent fee. Using the subject matter or the scope of an appeal to constrain when an appeal may trigger an enhanced fee is arbitrary and is not warranted on these facts. We see no basis to create an artificial distinction that would foster uncertainty and litigation over contingent-fee clauses. Furthermore, the issue addressed in *Lane* is not presented here, because the placental-injury claims and the added defendants in this case were within the scope of the retainer clause of the fee agreement. The agreement states that defendants "retain[ ] Attorney for representation of Client with regard to the wrongful death of Shane Charles Lynn on or about April 17, 2000." As with the settlement of $100,000 for Angela Lynn's personal injuries, the placental-injury claims arose from the same transaction as the wrongful death of the Lynns' child and thus were within the scope of the retainer clause of the fee agreement. All told, the myriad possible circumstances surrounding an appeal suggest that a legal rule to define a threshold for fee enhancement that is based on an appeal would not solve any inherent problem of client expectations. We conclude that defendants are not entitled to judgment in their favor in this case.

To the contrary, we conclude that the fee agreement is enforceable according to its unambiguous terms, namely, that the filing of a notice of appeal triggered the enhanced-fee clause. Thus plaintiff, rather than defendants, is entitled to summary judgment. Because of the basis on which we decide

this case, we do not reach plaintiff's alternative arguments about ratification or *quantum meruit*.

Reversed and remanded with instructions to enter summary judgment for plaintiff.