**Anthony FARINA, Plaintiff–Appellant,**

v.

**MT. BACHELOR, INC.,**
**Defendant–Appellee.**

**No. 94–35103.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1995.

Decided Sept. 18, 1995.

Lauren E. Jones, Jones Associates, Providence, RI, for plaintiff-appellant.

Howard G. Arnett, Karnopp, Petersen, Noteboom, Hubel, Hansen & Arnett, Bend, OR, for defendant-appellee.

Before: HUG and FERGUSON, Circuit Judges, and WILLIAM W SCHWARZER, District Judge.*

FERGUSON, Circuit Judge:

Anthony Farina sued defendant, Mt. Bachelor, Inc., in tort for personal injuries suffered while skiing at Mt. Bachelor's facility. The district court had diversity jurisdiction over the case. The district court granted summary judgment in favor of Mt. Bachelor on the basis that the release clause which was in Farina's signed application for a season pass was enforceable. Farina appealed. We reverse and remand for trial.

## BACKGROUND

Farina's injury occurred when he was skiing downhill at Mt. Bachelor's facility on March 31, 1992. Farina claims that he ran into an unmarked boulder hidden below the crest of a hill which obstructed his view of the boulder as he approached it. His injuries included multiple fractures.

Prior to his accident, Farina had purchased a season ski pass at Mt. Bachelor's facility. To purchase the pass, Farina was required to complete a season pass application. The application is a two-sided document. On the back of the application is a notice to skiers entitled "Skiers Responsibility Code." The notice describes the "inherent risks of skiing" that skiers are deemed to have accepted under Oregon law, including changing weather conditions, varying terrain, and surface and subsurface conditions. The notice also describes the skiers' duties while skiing at Mt. Bachelor's facility.

The front of the application contains a list of prices and qualifications for obtaining a season pass. It also describes the legal effect of the season pass and the conditions upon which refunds will be granted. The application states that no refunds will be granted due to lack of snow or for reasons other than injuries. The application then incorporates the "Skiers Responsibility Code" from the back of the application and

quotes some of the Code's description of the "inherent risks of skiing."

Towards the bottom of the front page of the application, beginning one and one-half inches above the line where Farina placed his signature, the following language appears:

In consideration of my participation in skiing, and use of this season pass and Mt. Bachelor's facilities, I agree to release from liability and to indemnify and hold harmless Mt. Bachelor, Inc., and their officers and directors, owners, agents, landowners, affiliated companies and employees, and any organizers or sponsors of skiing events, from any and all claims, losses, and liabilities (including costs and attorney fees) that I may now have or which I may hereafter have for injury or death to myself, or which I may be liable for to others, arising out of or in any way connected with my preparation or practice for, or my participation in, any ski races, ski training, skiing or any other use of the facilities at Mt. Bachelor, Inc. from October 1, 1991 to October 1, 1992. This release and indemnity agreement shall apply to claims based upon negligence and for any other theory of recovery.

I/we the undersigned, have carefully read and understood this agreement and all of its terms. I/we understand that this is an agreement of release and indemnity which will prevent me or my estate from recovering damages in the event of death or injury. I/we, nevertheless, enter into this agreement freely and voluntarily and agree that it will be binding upon me/us, my/our heirs, assigns, and my/our legal representatives.

This language is not set off under a different subheading, but rather is a continuation of the text preceding it which describes the "inherent risks of skiing." The text of the quoted language is of the same small size print as the rest of the text on the front page of the application. Each line of the printed form contains approximately 130 letters, making reading difficult and tedious.

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

Farina signed the season ski pass application, but contends that he did not realize that the application contained a release clause that would relieve Mt. Bachelor of liability in operating the facility.

Mt. Bachelor moved for summary judgment on the ground that Farina could not recover damages caused by Mt. Bachelor's negligence because he had signed an enforceable release clause when he purchased his season ski pass from Mt. Bachelor. The district court granted summary judgment in favor of Mt. Bachelor. Farina now appeals.

### DISCUSSION

■■■ We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291. We review *de novo* the district court's grant of summary judgment. *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).

In this diversity action, we are bound by applicable Oregon law. Our determination of whether a release clause is enforceable is therefore governed by the test recently discussed and applied in *Mann v. Wetter*, 100 Or.App. 184, 785 P.2d 1064, *rev. denied*, 309 Or. 645, 789 P.2d 1387 (1990). The court in *Mann* described the test as consisting of two considerations:

> An agreement limiting liability is governed by principles of contract law and will be enforced in the absence of some consideration of public policy derived from the nature of the subject of the agreement or a determination that the contract was adhesionary.

*Id.* at 187, 785 P.2d at 1066. We hold that the release clause is unenforceable.

■■■ The release clause in the Mt. Bachelor season pass application is unenforceable because it violates public policy. As the Supreme Court of Oregon stated, "[a]greements to exonerate a party from liability or to limit the extent of the party's liability for tortious conduct are not favorites of the courts but neither are they automatically voided." *K–Lines, Inc. v. Roberts Motor Company*, 273 Or. 242, 248, 541 P.2d 1378, 1382 (1975). There are numerous considerations of public

policy that can render a release clause unenforceable.

In this case, an important public policy consideration precludes enforcement of the release clause. The clause in the application Farina signed specifically states: "THIS RELEASE AND INDEMNITY AGREEMENT SHALL APPLY TO CLAIMS BASED UPON NEGLIGENCE *AND FOR ANY OTHER THEORY OF RECOVERY.*" (Emphasis added.) The clause exculpates Mt. Bachelor from liability for more than ordinary negligence, including gross negligence and wanton or wilful misconduct.

This attempt to escape liability for more than ordinary negligence renders the release clause invalid. In *K–Lines*, 273 Or. at 249, 541 P.2d at 1382, the Oregon Supreme Court held that an exculpatory clause is only legal if it seeks to exempt liability for ordinary negligence. The Court quoted with approval the Restatement of Contracts § 574, which states:

> A bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal except in the cases stated in § 575.
>
> *Comment:*
> a. By negligence is meant any conduct not recklessly disregardful of the interests of others which falls below the standard established by law for the protection of others against unreasonable risk of harm. By gross negligence is meant conduct falling greatly below that standard.

Restatement of Contracts § 574 and cmt. a (1932). *See also Irish & Swartz Stores v. First National Bank*, 220 Or. 362, 375, 349 P.2d 814, 821–22 (1960) (the court relied in its holding on both §§ 574 and 575 of the Restatement of Contracts. Section 575 states that an exemption from liability for wilful breach of duty is also illegal.), *overruled on other grounds by Real Good Food Store, Inc. v. First National Bank of Oregon*, 276 Or. 1057, 557 P.2d 654 (1976). Thus, through a concern for public policy considerations, courts generally have only enforced exculpatory provisions that are limited to ordinary negligence. *See, e.g., Davis v. Com-*

*monwealth Edison Company,* 61 Ill.2d 494, 500–01, 336 N.E.2d 881, 885 (1975) ("an agreement to indemnify against wilful misconduct would, as a general rule, be contrary to public policy and unenforceable ..."). *See also* 15 S. Williston, Contracts § 1750A (3d ed.1972); 6A A. Corbin, Contracts § 1472 (1964).

■ Because Mt. Bachelor made an unenforceable bargain in trying to escape liability for gross negligence and willful misconduct, the entire release provision in the season pass application, including the limitation of liability for ordinary negligence, is unenforceable. In contrast to other release clauses, the language of the release provision in this case does not manifest an intention by Mt. Bachelor or by Farina that the provision be severable. *See George v. School District No. 8R of Umatilla County,* 7 Or.App. 183, 188, 490 P.2d 1009, 1012 (1971) ("Whether a contract is divisible depends on the intention of the parties. Such intent is determined primarily through construction or interpretation of the contract.") (citations omitted). In one simple, broad sentence, Mt. Bachelor sought to exculpate itself for any and all claims that an injured skier might bring against it. This attempt rendered Mt. Bachelor's entire release clause invalid. It is not our role to enforce only part of the release clause where it is not obvious from the language of the clause that the parties intended the clause to be severable.

### CONCLUSION

The judgment of the district court is REVERSED and the case is REMANDED for trial.