Argued and submitted December 13, 1996, affirmed February 5, 1997

Bobbie HARMON,
*Appellant,*

*v.*

MT. HOOD MEADOWS, LTD.,
an Oregon Limited Partnership,
and Mt. Hood Meadows Development Corporation,
an Oregon corporation,
*Respondents.*

(9603-02414; CA A93717)

932 P2d 92

Paul G. Dodds argued the cause for appellant. With him on the briefs were Douglas D. Morris and Brownstein, Rask, Arenz, Sweeney, Kerr & Grim.

Brad C. Stanford argued the cause for respondent. With him on the brief were F. Scott Farleigh and Farleigh, Wada & Witt.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

**HASELTON, J.**

Plaintiff appeals from the entry of summary judgment in an action for negligence against the defendant ski resort. The trial court determined that plaintiff's claims were barred by a release that she had executed, as part of her season pass application, and particularly rejected plaintiff's contention that the release was unenforceable as violating public policy. We conclude that enforcement of the release against plaintiff in the circumstances of this case would not offend public policy. Accordingly, we affirm.

The material facts are, for purposes of this appeal, undisputed. Defendant Mt. Hood Meadows, Ltd., owns and operates the Mt. Hood Meadows ski resort. Defendant Mt. Hood Meadows Development Corporation is the general partner of Mt. Hood Meadows, Ltd. On October 14, 1993, plaintiff executed an application for a season pass at Mt. Hood Meadows. The front of the application, immediately above the signature line, bore the following language:

> "All applicants named on this Season Pass application who will be 18 or older during 1993 must read and sign this application. I have read the Season Pass Terms, Conditions & Release (on the reverse side of this application), and I understand and agree to these terms.
>
> "I hereby release Mt. Hood Meadows and its owners, agents and employees from any and all liability (including claims based upon negligence) for damage or injury to myself and all others named on this Season Pass application accepting myself the full responsibility for any and all such damage or injury of any kind which may result directly or indirectly from the use of this pass or from any skiing or any other activities."

The reverse side of the application set out a variety of terms and conditions in various type faces and type sizes. Paragraph 10 of those terms and conditions, which was the only provision set out entirely in capital letters, states:

> "ON BEHALF OF MYSELF AND ALL OTHERS NAMED ON THIS SEASON PASS APPLICATION, I HEREBY RELEASE MT. HOOD MEADOWS AND ITS OWNERS, AGENTS AND EMPLOYEES FROM ANY

AND ALL LIABILITY (INCLUDING CLAIMS BASED UPON NEGLIGENCE) FOR DAMAGE OR INJURY TO MYSELF AND ALL OTHERS NAMED ON THIS SEASON PASS APPLICATION, ACCEPTING MYSELF THE FULL RESPONSIBILITY FOR ANY AND ALL SUCH DAMAGE OR INJURY OF ANY KIND WHICH MAY RESULT DIRECTLY OR INDIRECTLY FROM THE USE OF THIS PASS OR FROM ANY SKIING OR OTHER ACTIVITIES."[1]

On April 3, 1994, plaintiff was injured while attempting to board a chair lift at Mt. Hood Meadows. In March 1996, plaintiff brought this action, alleging that defendants were negligent in several particulars that caused her injuries.[2] Plaintiff did not allege any basis for liability other than negligence.

■ Defendants moved for summary judgment, asserting that the release provisions of the season pass application barred plaintiff's negligence claim. Plaintiff filed a cross-motion for partial summary judgment on the enforceability of the release. Invoking *Farina v. Mt. Bachelor, Inc.*, 66 F3d 233 (9th Cir 1995), plaintiff argued that the exculpatory provisions were unenforceable as violating public policy, in that those provisions relieved defendants not only from liability for negligence, but from "any and all liability[.]" The trial court concluded that the exculpatory provisions barred plaintiff's negligence claim and, consequently, granted defendants' motion for summary judgment and denied plaintiff's cross-motion for partial summary judgment.

---

[1] Because of the release provisions' explicit reference to "claims based upon negligence," there is no question here, as there was in *Estey v. MacKenzie Engineering, Inc.*, 324 Or 372, 378, 927 P2d 86 (1996), as to whether those provisions "clearly and unequivocally expresse[d] an intent to limit defendants' liability for the consequences of their own negligence[.]"

[2] Plaintiff alleged that defendants were negligent:

"a. In failing to position the chair in a flat position;

"b. In failing to be attentive to plaintiff as she was attempting to board the chair;

"c. In failing to properly assist plaintiff in boarding under the circumstances then and there existing;

"d. In failing to promptly stop the ski lift so as to avoid further injury to plaintiff."

On appeal, plaintiff reiterates that the exculpatory provisions are unenforceable and summarizes her position:

"The gist of plaintiff's argument is that defendants' release is unenforceable because it is overbroad. Plaintiff does not argue that defendants could [not] have drawn an enforceable release clause to exculpate themselves from ordinary negligence; plaintiff argues only that defendant has not done so here because the release they chose to draw is too broad."

Thus, plaintiff does not contend that, under Oregon law, ski resorts cannot relieve themselves from the consequences of their own negligence.[3] Moreover, plaintiff does not contend that defendant's exculpatory provisions are unenforceable as embodying a contract of adhesion.[4] Rather, she argues that: (1) under the analysis of *K-Lines v. Roberts Motor Co.*, 273 Or 242, 541 P2d 1378 (1975), exculpatory clauses that attempt to relieve a party of liability for more than ordinary negligence violate Oregon public policy; (2) the release language at issue here has that effect—*i.e.*, it encompasses conduct

---

[3] Given that implicit concession, we assume, without deciding, that a release relieving a ski resort solely from the consequences of its own negligence does not offend Oregon public policy. We note, parenthetically, that other jurisdictions have reached conflicting results on that issue. *Compare, e.g., Dalury v. S-K-I, Ltd.*, 670 A2d 795, 797-800 (Vt 1995) (ski resort's release from liability for negligence held unenforceable: "Defendants, not recreational skiers, have the expertise and opportunity to foresee and control hazards, and to guard against the negligence of their agents and employees.") *with McBride v. Minstar, Inc.*, 283 NJ Super 471, 491, 662 A2d 592 (1994), *aff'd sub nom McBride v. Raichle Molitor, USA*, 283 NJ Super 422, 662 A2d 567, *cert den* 143 NJ 319 (1995) (enforcing exculpatory clause included in contract to sell equipment: "When an individual enters a ski shop to buy ski equipment, s/he does not have a *need* for those goods and services, merely a desire. * * * The skier merely faces the prospect of a ski-less weekend.") & *id.* at 494 (citing authority for proposition that a majority of jurisdictions enforce "the ski industry's commonly-used exculpatory clause"). *Cf. Milligan v. Big Valley Corp.*, 754 P2d 1063, 1067 (Wyo 1988) (provision exculpating ski resort from negligence in sponsoring and staging ski race as part of "Ironman Decathlon" competition barred negligence-based action for wrongful death: "[Decedent] could have chosen not to race. Skiing in the race was not a matter of practical necessity for the public, and putting on the race was not an essential service."). *Accord Mann v. Wetter*, 100 Or App 184, 785 P2d 1064, *rev den* 309 Or 645 (1990) (scuba diving school's standard exculpatory clause barred negligence-based action for wrongful death: "[T]here are no public policy considerations that prevent a diving school from limiting liability for its own negligence. The diving school does not provide an essential public service[.]" (citing, *inter alia, Milligan*)).

[4] *See, e.g., McBride*, 283 NJ Super at 491; *Milligan*, 754 P2d at 1067 (both holding that exculpatory provisions in ski-related form agreements were not impermissibly adhesive).

exceeding mere negligence; and (3) accordingly, the release, in its entirety, is unenforceable as offending Oregon public policy.

As primary support for her position, plaintiff relies on the Ninth Circuit's opinion in *Farina. Farina* involved facts closely analogous to those presented here. There, the plaintiff, who had signed a season pass application that included release language similar to that at issue here,[5] was injured while skiing at Mt. Bachelor. He brought a personal injury action against the resort, alleging negligence, and the resort moved for summary judgment based on the release. The district court granted summary judgment.

The Ninth Circuit, applying its understanding of Oregon law, reversed. The court first determined that Mt. Bachelor's release was unenforceable because it violated Oregon public policy:

> "In this case, an important public policy consideration precludes enforcement of the release clause. * * * The clause exculpates Mt. Bachelor from liability for more than ordinary negligence, including gross negligence and wanton or willful misconduct.
>
> "This attempt to escape liability for more than ordinary negligence renders the release clause invalid. In *K-Lines*, 273 Or at 249, 541 P2d at 1382, the Oregon Supreme Court held that an exculpatory clause is only legal if it seeks to exempt liability for ordinary negligence. * * *
>
> "* * * * *
>
> "Thus, through a concern for public policy considerations, courts generally have only enforced exculpatory provisions that are limited to ordinary negligence." *Farina*, 66 F3d at 235 (citations omitted).

---

[5] The pertinent release language in *Farina*, provided, in part:

"I agree to release from liability and to indemnify and hold harmless Mt. Bachelor, Inc., * * * from any and all claims, losses, and liabilities (including costs and attorney fees) that I may now have or which I may hereafter have for injury or death to myself, or which I may be liable for to others, arising out of or in any way connected with my preparation or practice for, or my participation in, any ski races, ski training, skiing or any other use of the facilities at Mt. Bachelor, Inc. * * *. *This release and indemnity agreement shall apply to claims based upon negligence and for any other theory of recovery.*" (Emphasis supplied.)

The court then proceeded to hold that, because Mt. Bachelor's release was impermissibly overbroad—*i.e.*, it encompassed conduct other than mere negligence—it was unenforceable even as to the plaintiff's claims that sounded solely in negligence:

> "Because Mt. Bachelor made an unenforceable bargain in trying to escape liability for gross negligence and willful misconduct, the entire release provision in the season pass application, including the limitation of liability for ordinary negligence, is unenforceable. In contrast to other release clauses, the language of the release provision in this case does not manifest an intention by Mt. Bachelor or by Farina that the provision be severable. In one simple, broad sentence, Mt. Bachelor sought to exculpate itself for any and all claims that an injured skier might bring against it. This attempt rendered Mt. Bachelor's entire release clause invalid. It is not our role to enforce only part of the release clause where it is not obvious from the language of the clause that the parties intended the clause to be severable."
> *Id.* at 236 (citations omitted).

The Ninth Circuit cited no authority substantiating its "overbreadth/anti-severability" analysis. That is, the court cited no authority from Oregon—or, indeed, from any jurisdiction—to the effect that a plaintiff who pleads only negligence can avoid a release that explicitly bars negligence claims, merely because the release impermissibly purports to shield defendant from other claims.

■ We respectfully disagree with the Ninth Circuit's "overbreadth" analysis. As amplified below, a party who seeks to avoid the enforcement of a contractual provision on the ground that the provision offends some general, uncodified public policy, must demonstrate that enforcement of that provision in the circumstances of his or her case will, in fact, offend that generalized public policy. Most simply, the party must show that, *as applied*, the contractual term is unenforceable on grounds of public policy. Here, plaintiff does not contend that Oregon public policy precludes a ski resort from limiting its liability for negligence; thus, regardless of whether defendants' release might be unenforceable as to other plaintiffs asserting other claims, it is not unenforceable

as applied to plaintiff. Accordingly, the trial court properly dismissed plaintiff's complaint.[6]

■    The question of whether a contract provision is unenforceable as against some general, uncodified public policy must be determined on an "as applied" basis. Unlike in the First Amendment context, where a party who falls within a statute's clear ambit may nevertheless challenge the statute as being facially invalid because it may be overbroad as to others, a party seeking to avoid contractual responsibility must demonstrate that enforcement of the contractual provision as to him or her will offend public policy. That is so regardless of whether enforcement of the same contractual provision against other parties in other circumstances would violate public policy.

*Restatement (Second) of Contracts* § 178 embodies that "as applied" principle:

"(1)    A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable *or the interest in its enforcement is clearly outweighed in the circumstances* by a public policy against the enforcement of such terms.

"(2)    In weighing the interest in the enforcement of a term, account is taken of

"(a)    the parties' justified expectations,

"(b)    any forfeiture that would result if enforcement were denied, and

"(c)    any special public interest in the enforcement of the particular term." (Emphasis supplied.)

---

[6] Because our disposition rests on those grounds, we neither endorse, nor reject, *Farina*'s characterization of *K-Lines* as establishing the principle that Oregon public policy precludes exculpation of liability for gross negligence, recklessness, or intentional misconduct. 66 F3d at 235. *Cf. Restatement (Second) of Contracts* § 195(1) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy.").

We note, however, that the precise question in *K-Lines* pertained to the enforceability of a commercial limitation of remedy clause that "limit[ed] the defendants' liability to repairs and replacement of defective parts and excluded any further liability[,]" including strict liability in tort. 273 Or at 244. The court concluded that, "as applied to the facts of this case, the limitation provisions are not invalid as being contrary to public policy." *K-Lines*, 273 Or at 254 (footnote omitted).

A leading commentator on contract law has endorsed and explained the "as applied" underpinnings of the "unenforceable as against public policy" doctrine:

> "In doubtful cases, * * * the court's decision must rest on a delicate balancing of factors for and against enforcement of the particular agreement. Enforcement should not be refused unless the potential benefit in deterring misconduct or avoiding an inappropriate use of the judicial process outweighs the factors favoring enforceability." E. Allan Farnsworth, *Farnsworth on Contracts* § 5.1 (1990).

Thus, the court should enforce the parties' contract unless enforcement will, in fact, offend an important public policy.

Our conclusion in that regard is consistent with Oregon precedent. Although we have found no Oregon case that explicitly addressed the "as applied" issue as it is presented here, the Oregon Supreme Court has consistently assumed that contractual enforceability is to be determined on an "as applied" basis. For example, in *Cone v. Gilmore*, 79 Or 349, 353, 155 P 192 (1916), the court observed:

> "The question of whether or not a particular contract is void as being against public policy must be determined largely by the facts of the particular case, and, if the agreement is one that tends to the injury of the public or is inconsistent with sound morality, it will be condemned by the courts; otherwise, it will be upheld."

Similarly, in *Bliss v. Southern Pacific Co. et al*, 212 Or 634, 646, 321 P2d 324 (1958), the court stated:

> "When two or more persons competent for that purpose, upon a sufficient consideration, voluntarily agree to do or not to do a particular thing which may be lawfully done or omitted, they should be held to the consequences of their bargain. It is elementary that public policy requires that such contracts shall be held sacred and shall be enforced by the courts of justice unless some other overpowering rule of public policy intervenes which renders such agreement illegal or unenforceable. This rule imposes upon the court a duty to give contracts of that character effect, especially when they have been acted upon by the parties." (Citations omitted.)

*See, e.g., K-Lines*, 273 Or at 254 ("We hold that as applied to the facts of this case, the limitations provisions are not invalid as being contrary to public policy." (Footnote omitted.)).

The application of the "as applied" principle in this case is straight-forward. Plaintiff, like the plaintiff in *Farina*, argues that the release is facially invalid as impermissibly overbroad—not that its particular application to her negligence claim offends Oregon public policy. Regardless of whether the release might offend public policy in other circumstances, plaintiff has not identified any "overpowering rule of public policy," *Bliss*, 212 Or at 646, that precludes enforcement of the release against plaintiff's negligence claim. Accordingly, the trial court properly granted summary judgment.

Affirmed.