Argued and submitted September 6, 2012, affirmed September 5, 2013, petition for review allowed January 7, 2014 (354 Or 699)

Myles A. BAGLEY,
individually,
*Plaintiff-Appellant,*
*and*

Al BAGLEY,
individually;
and Lauren Bagley,
individually,
*Plaintiffs,*

*v.*

MT. BACHELOR, INC.,
dba Mt. Bachelor Ski and Summer Resort,
*Defendant-Respondent,*

*and*

JOHN DOES 1-10,
*Defendants.*

Deschutes County Circuit Court
08CV0118SF; A148231

310 P3d 692

Kathryn H. Clarke argued the cause for appellant. On the opening brief were Bryan W. Gruetter and Joseph S. Walsh. With her on the reply brief was Lisa T. Hunt.

Andrew C. Balyeat argued the cause for respondent. With him on the brief was Balyeat & Eager, LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Plaintiff Bagley, after suffering serious injuries while snowboarding over a "jump" in defendant Mt. Bachelor, Inc.'s (Mt. Bachelor) "terrain park," brought this action alleging negligence in the design, construction, maintenance, or inspection of that jump.[1] The trial court granted Mt. Bachelor's motion for summary judgment, which was based on the affirmative defense of release, and denied Bagley's cross-motion for partial summary judgment pertaining to that same issue. Bagley appeals, asserting that the trial court erred in (1) concluding that there was no genuine issue of material fact as to whether Bagley ratified, after reaching the age of majority, a release agreement entered into while he was a minor; (2) concluding that the release agreement was not contrary to public policy; and (3) concluding that the release agreement was neither substantively nor procedurally unconscionable. For the reasons that follow, we agree with the trial court and, accordingly, affirm.

In reviewing a grant of summary judgment, we view the facts, along with all reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party—here, Bagley on Mt. Bachelor's motion and Mt. Bachelor on Bagley's cross-motion. ORCP 47 C; *Vaughn v. First Transit, Inc.*, 346 Or 128, 132, 206 P3d 181 (2009). On September 29, 2005, just under two weeks before his eighteenth birthday, Bagley purchased a "season pass" from Mt. Bachelor. Bagley was a skilled and experienced snowboarder, having purchased season passes from Mt. Bachelor for each of the preceding three years and having classified his skill level as of early 2006, immediately prior to the injury, as "advanced expert." Upon purchasing the season pass, he executed a release agreement as required by Mt. Bachelor. That agreement read, in pertinent part:

"RELEASE AND INDEMNITY AGREEMENT

"IN CONSIDERATION OF THE USE OF A MT. BACHELOR PASS AND/OR MT. BACHELOR'S PREMISES, I/WE AGREE TO RELEASE AND INDEMNIFY MT. BACHELOR,

---

[1] For ease of reading, notwithstanding additional named parties (Bagley's parents and "John Does 1-10"), we refer throughout this opinion to plaintiff "Bagley" and defendant "Mt. Bachelor."

INC., ITS OFFICERS AND DIRECTORS, OWNERS, AGENTS, LANDOWNERS, AFFILIATED COMPANIES, AND EMPLOYEES (HEREINAFTER 'MT. BACHELOR, INC.') FROM ANY AND ALL CLAIMS FOR PROPERTY DAMAGE, INJURY, OR DEATH WHICH I/WE MAY SUFFER OR FOR WHICH I/WE MAY BE LIABLE TO OTHERS, IN ANY WAY CONNECTED WITH SKIING, SNOWBOARDING, OR SNOWRIDING. *THIS RELEASE AND INDEMNITY AGREEMENT SHALL APPLY TO ANY CLAIM EVEN IF CAUSED BY NEGLIGENCE.* THE ONLY CLAIMS NOT RELEASED ARE THOSE BASED UPON INTENTIONAL MISCONDUCT.

"* * * * *

"*THE UNDERSIGNED(S) HAVE CAREFULLY READ AND UNDERSTAND THIS AGREEMENT AND ALL OF ITS TERMS* ON BOTH SIDES OF THIS DOCUMENT. THIS INCLUDES, BUT IS NOT LIMITED TO, THE DUTIES OF SKIERS, SNOWBOARDERS, OR SNOWRIDERS. THE UNDERSIGNED(S) UNDERSTAND THAT THIS DOCUMENT IS AN AGREEMENT OF RELEASE AND INDEMNITY WHICH WILL PREVENT THE UNDER-SIGNED(S) OR THE UNDERSIGNEDS' ESTATE FROM RECOVERING DAMAGES FROM MT. BACHELOR, INC. IN THE EVENT OF DEATH OR INJURY TO PERSON OR PROPERTY. THE UNDERSIGNED(S), NEVERTHELESS, ENTER INTO THIS AGREEMENT FREELY AND VOLUNTARILY AND AGREE IT IS BINDING ON THE UNDERSIGNED(S) AND THE UNDERSIGNEDS' HEIRS AND LEGAL REPRESENTATIVES.

"BY MY/OUR SIGNATURE(S) BELOW, I/WE AGREE THAT THIS RELEASE AND INDEMNITY AGREEMENT WILL REMAIN IN FULL FORCE AND EFFECT AND I WILL BE BOUND BY ITS TERMS THROUGHOUT THIS SEASON AND ALL SUBSEQUENT SEASONS FOR WHICH I/WE RENEW THIS SEASON PASS.

"SEE REVERSE SIDE OF THIS SHEET * * * FOR DUTIES OF SKIERS, SNOWBOARDERS, OR SNOW RIDERS WHICH YOU MUST OBSERVE."

(Underscoring and capitalization in original; emphases added.) The reverse side of the document detailed the "Duties of Skiers" pursuant to ORS 30.990 and ORS 30.985 and also included printed notification that "Skiers/Snowboarders/

Snowriders Assume Certain Risks" under ORS 30.975—
namely, the "inherent risks of skiing."[2] In addition, because
Bagley was not yet 18, his father executed a "minor release
and indemnity agreement" (capitalization omitted) that read
as follows:

> "I HEREBY AGREE TO RELEASE AND INDEMNIFY
> MT. BACHELOR, INC., ITS OFFICERS AND DIRECTORS,
> OWNERS, AGENTS, LANDOWNERS, AFFILIATED COM-
> PANIES, AND EMPLOYEES FROM ANY AND ALL
> CLAIMS FOR PROPERTY DAMAGE, INJURY, OR
> DEATH WHICH THE MINOR(S) NAMED BELOW MAY
> SUFFER OR FOR WHICH HE OR SHE MAY BE LIABLE
> TO OTHERS, IN ANY WAY CONNECTED WITH SKIING,
> SNOWBOARDING, OR SNOWRIDING. *THIS RELEASE
> AND INDEMNITY AGREEMENT SHALL APPLY TO
> ANY CLAIM EVEN IF CAUSED BY NEGLIGENCE.* THE
> ONLY CLAIMS NOT RELEASED ARE THOSE BASED
> UPON INTENTIONAL MISCONDUCT.

> "BY MY SIGNATURE BELOW, I AGREE THAT THIS
> MINOR RELEASE AND INDEMNITY AGREEMENT
> WILL REMAIN IN FULL FORCE AND EFFECT AND I
> WILL BE BOUND BY ITS TERMS THROUGHOUT THIS
> SEASON AND ALL SUBSEQUENT SEASONS FOR
> WHICH THIS SEASON PASS IS RENEWED.

> "I HAVE CAREFULLY READ AND UNDERSTAND THIS
> AGREEMENT AND ALL OF ITS TERMS."

(Capitalization in original; emphasis added.)

Less than two weeks after purchasing the season
pass and executing the above-quoted release agreement,
Bagley reached the age of majority—turning 18 on October 12,
2005. Thereafter, on November 18, 2005, Bagley began
using the pass, on which the crux of the release agreement
was also printed:

---

[2] Oregon has promulgated statutes specifically pertaining to skiing and ski
areas. *See* ORS 30.970 - 30.990. Those statutes, *inter alia*, set forth the "duties"
of skiers, require that ski area operators inform skiers of those duties, establish
notice requirements and a statute of limitations pertaining specifically to injury or
death while skiing, and provide that those who engage in the sport of skiing accept
and assume the risks inherent in that activity.

"READ THIS RELEASE AGREEMENT

"IN CONSIDERATION FOR EACH LIFT RIDE, THE TICKET USER RELEASES AND AGREES TO HOLD HARMLESS AND INDEMNIFY MT. BACHELOR, INC., AND ITS EMPLOYEES AND AGENTS FROM ALL CLAIMS FOR PROPERTY DAMAGE, INJURY OR DEATH *EVEN IF CAUSED BY NEGLIGENCE.* THE ONLY CLAIMS NOT RELEASED ARE THOSE BASED UPON INTENTIONAL MISCONDUCT."

(Capitalization in original; emphasis added.) Further, the following sign was posted at each of Mt. Bachelor's ski lift terminals:

"YOUR TICKET IS A RELEASE

"The back of your ticket contains a release of all claims against Mt. Bachelor, Inc. and its employees or agents. *Read the back of your ticket before you ride any lifts or use any of the facilities of Mt. Bachelor, Inc.* If you purchase a ticket from someone else, you must provide this ticket release information to that person or persons.

"Skiers and lift passengers who use tickets at this resort release and agree to hold harmless and indemnify Mt. Bachelor, Inc., its employees and agents from all claims for property damage, injury or death which he/she may suffer or for which he/she may be liable to others, arising out of the use of Mt. Bachelor's premises, *whether such claims are for negligence or any other theory of recovery, except for intentional misconduct.*

"If you do not agree to be bound by the terms and conditions of the sale of your ticket, please do not purchase the ticket or use the facilities at Mt. Bachelor.

"Presentation of this ticket to gain access to the premises and facilities of this area is an acknowledgment of your agreement to the terms and conditions outlined above."

(Capitalization in original; emphases added.)

Ultimately, beginning on November 18, 2005, *after* his eighteenth birthday, Bagley used his season pass to ride Mt. Bachelor's lifts at least 119 times over the course of 26 days spent snowboarding at the ski area. However, on February 16, 2006, while snowboarding over a manmade jump in Mt. Bachelor's "air chamber" terrain park, Bagley sustained serious injuries resulting in permanent paralysis.

On June 16, 2006, approximately four months later, Bagley provided Mt. Bachelor with formal notice of his injury under ORS 30.980(1), which requires that "[a] ski area operator *** be notified of any injury to a skier *** within 180 days after the injury ***." Nearly two years after the injury, on February 15, 2008, Bagley brought this action—filing a complaint alleging negligence on Mt. Bachelor's part in designing, constructing, maintaining, or inspecting the jump on which Bagley was injured. Mt. Bachelor answered, in part, by invoking the affirmative defense of release— pointing to the above-quoted release agreements signed by Bagley and his father prior to the date of injury.

Mt. Bachelor quickly moved for summary judgment on that ground, arguing before the trial court that, by failing to disaffirm the voidable release agreement within a reasonable period of time after reaching the age of majority, and by accepting the benefits of that agreement and "objectively manifest[ing] his intent to affirm" it (*i.e.*, by riding Mt. Bachelor's lifts 119 times over 26 days), Bagley had ratified the release and was therefore bound by it. Mt. Bachelor further noted that Bagley "admittedly understood that he [had] entered into a release agreement and was snowboarding under its terms on the date of [the] accident." Accordingly, Mt. Bachelor argued, because Bagley had ratified a release agreement that unambiguously disclaimed liability for negligence, there was no material issue of fact as to whether that agreement barred Bagley's action, and Mt. Bachelor was entitled to judgment as a matter of law.[3]

Bagley then filed a cross-motion for partial summary judgment as to Mt. Bachelor's affirmative defense of release, arguing that "there [was] no genuine issue of material fact [as to whether] the release [was] void and unenforceable as a matter of law." Specifically, Bagley argued that he timely disaffirmed the release agreement by (1) notifying Mt. Bachelor of the injury pursuant to ORS 30.980(1), (2) filing his complaint for negligence within the two-year statute of limitations "for injuries to a skier" established by

---

[3] Mt. Bachelor additionally argued, as pertinent to this appeal, that the release agreement was neither adhesionary nor contrary to public policy under Oregon law. Specifically, it argued that "skiers and snowboarders voluntarily choose to ski and snowboard and ski resorts do not provide essential public services."

ORS 30.980(3), and (3) "plead[ing] infancy as a defense to [Mt. Bachelor's] First Affirmative Defense on the release executed by [Bagley] while an infant." Additionally, in response to Mt. Bachelor's motion, Bagley alternatively argued that "whether [he] disaffirmed the Release within a reasonable time should be determined by the jury as a question of fact" because a material issue of fact existed as to Bagley's knowledge of both the scope of the release (namely, whether it covered claims for negligence) and "of his right to disaffirm" it (*i.e.*, whether it was voidable). He further argued that the release was contrary to public policy and "both substantively and procedurally unconscionable."

The trial court agreed with Mt. Bachelor, reasoning that Bagley's "use of the pass following his eighteenth birthday constitute[d] an affirmation of the contract and release agreement each time the pass was used, a total of 119 times over a period of 26 different days, up to February 16, 2006[,]" and noting that, "[o]nce there [was] an affirmation, [Bagley could] no longer disaffirm the contract." The court rejected Bagley's public policy and unconscionability arguments, reasoning that "[s]now riding is not such an essential service which requires someone such as [Bagley] to be forced to sign a release in order to obtain the service." Accordingly, having determined that Bagley ratified the release agreement after reaching the age of majority and that "there [was] no basis by which [it could] find the release invalid[,]" the trial court granted summary judgment in Mt. Bachelor's favor and denied Bagley's cross-motion for partial summary judgment. Bagley now appeals, reprising his arguments below.

On appeal, we review the trial court's ruling on summary judgment to determine whether we agree "that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." ORCP 47 C; *see O'Dee v. Tri-County Metropolitan Trans. Dist.*, 212 Or App 456, 460, 157 P3d 1272 (2007). No genuine issue of material fact exists if, "based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C.

In his first assignment of error, Bagley asserts that "[t]here is a genuine factual dispute as to whether [his] actions or omissions after reaching the age of majority were enough to disaffirm or affirm the contract he entered with [Mt. Bachelor] when he was a minor." More specifically, Bagley argues that "[a] jury could reasonably infer from the facts that merely turning 18 years old and continuing to snowboard was not conclusive evidence of [his] intent to affirm the release and agree to waive all prospective claims for [Mt. Bachelor's] negligence." He argues that a jury "could just as easily find that he promptly disaffirmed the contract" by notifying Mt. Bachelor of the injury approximately four months after it occurred as required by ORS 30.980(1), by filing suit for negligence within the applicable statute of limitations, or by pleading infancy in response to Mt. Bachelor's affirmative defense of release.[4]

Mt. Bachelor likewise reprises its arguments below, asserting that Bagley admittedly knew that he was snowboarding under the terms of a release agreement, was aware of the inherent risks of snowboarding (particularly given his advanced, aerial style of snowboarding), and, "[u]nderstanding those risks," made "an informed decision to execute the release agreement" and "an informed decision to honor the agreement after reaching the age of majority because he wanted to snowboard." As noted, Mt. Bachelor points to Bagley's use of the pass after reaching the age of majority—arguing that Bagley ratified the release agreement by riding the lifts "no less than 119 times on 26 days before the subject accident."

In Oregon, a former minor may disaffirm a contract within a "reasonable time" after reaching the age of majority, *see Highland v. Tollisen*, 75 Or 578, 587, 147 P 558 (1915), or, conversely, may ratify a contract after reaching the age of majority by manifesting an intent to let the contract stand,

_____

[4] Bagley alternatively argues that, "even if there is no genuine dispute of material fact, the inferences arising from the facts in this case are susceptible to more than one reasonable conclusion precluding summary judgment." However, Bagley does not identify any facts that purportedly give rise to inferences susceptible to more than one reasonable conclusion, and, ultimately, his generalized argument to that effect is not materially different from his argument in support of his first assignment of error. Accordingly, we reject that alternative argument without further discussion.

*see Haldeman v. Weeks*, 90 Or 201, 205, 175 P 445 (1918); *see also* Richard A. Lord, 5 *Williston on Contracts* § 9:17, 166-70 (4th ed 2009) ("[I]f an infant after reaching the age of majority engages in any conduct that objectively manifests an intent to regard the bargain as binding, the former minor will be held as a matter of law to have ratified the contract."). Further, as particularly relevant here, although what constitutes a reasonable period of time after reaching the age of majority varies widely depending on the circumstances, it is well established that ratification of a voidable contract abolishes a party's power to later disaffirm it. *See Brown et ux v. Hassenstab et ux*, 212 Or 246, 256, 319 P2d 929 (1957) ("The two courses of action are inconsistent and the taking of one will preclude the other."); *Snyder v. Rhoads*, 47 Or App 545, 553-54, 615 P2d 1058, *rev den*, 290 Or 157 (1980) (similar).

Applying those principles to these facts, we agree with Mt. Bachelor and conclude that no objectively reasonable juror could find that Bagley disaffirmed the release agreement within a reasonable time after turning 18. Rather, the record gives rise to only one reasonable conclusion: By using the season pass at least 119 times over the course of 26 days between November 18, 2005 and February 16, 2006, Bagley objectively manifested his intent to let the release stand—affirmatively electing to ride the lifts and snowboard under the terms of the agreement (*i.e.*, to accept the benefits of the agreement). His actions *after* the date of injury—at which time the release had already been ratified and Bagley's power to disaffirm it thereby defeated—are immaterial. *Cf. Highland*, 75 Or at 587 (former minor's disaffirmance held valid under circumstances *where she had neither taken any affirmative action on the contract nor received any benefit from it*); *see also Restatement (Second) of Contracts* § 85 comment b (1981) (power of disaffirmance may be lost, *inter alia*, "by exercise of dominion over things received"); Lord, 5 *Williston on Contracts* § 9:17 at 170 ("[I]f the infant after attaining majority voluntarily receives performance in whole or in part from the other party to the contract, this will amount to a ratification.").[5]

---

[5] Although existing Oregon case law on point is limited, several other states have similarly reasoned that a former minor's acceptance of the benefits of a

In reaching that conclusion, we emphasize that Bagley was less than two weeks short of the age of majority when he signed the release agreement and did not begin snowboarding under its terms until well over a month after turning 18. He was also an experienced snowboarder, had signed release agreements at other ski resorts in the past, and had purchased a season pass and signed a release agreement for each of the preceding three years that he spent snowboarding at Mt. Bachelor. *See Haldeman*, 90 Or at 205 (considering former minor's maturity and life experience in determining whether contract had been ratified). Moreover, the language of the release was unambiguous, as discussed further below, and that language was both heavily emphasized and omnipresent—having been reproduced on the back of the physical season pass that Bagley was required to carry at all times and in large part on signage at each of the lift terminals to which Bagley was exposed at least 119 times. Indeed, given the exculpatory language on Bagley's pass and the signage directing his attention to it, it is not implausible that Bagley released Mt. Bachelor from liability for negligence each time that he rode one of the lifts.

Nevertheless, Bagley affirmatively chose to accept the benefits of the agreement after reaching the age of majority and, as noted, continued to do so until the date of injury notwithstanding the pass's and signage's continuing reminders of the existence of the agreement and provision of ample exposure to its terms. The following exchange, which occurred during Bagley's deposition, is particularly illustrative:

"[Mt. Bachelor's Counsel]: The reason you didn't go to Mt. Bachelor and tell them 'You know what, I signed this agreement when I was 17, now I'm 18, I want to void it, I don't want to be subject to it,' what I'm asking you to

---

contract may constitute a ratification. *See, e.g., Jones v. Dressel*, 623 P2d 370, 372-74 (Colo 1981) (holding that a former minor, who had signed a release at age 17 in order to skydive, "ratified the contract, as a matter of law, by accepting the benefits of the contract when he used [the defendant's] facilities" and further stating that the question whether that former minor's subsequent actions constituted disaffirmance of the contract was "not relevant" because the former minor had already ratified the contract); *Parsons ex rel Cabaniss v. American Family Insurance Co.*, 305 Wis 2d 630, 639, 740 NW2d 399, 403 (Wis Ct App 2007), *rev den*, 307 Wis 2d 294, 746 NW2d 811 (Wis 2008) (former minor ratified release agreement in connection with settlement by retaining funds given as consideration for that release).

acknowledge is the reason you didn't do that is because you wanted [to] continue [to snowboard] and did continue [to snowboard] under the terms of the season pass agreement.

"[Bagley]: Yes."

Thus, as the trial court correctly reasoned, when Bagley used the season pass 119 times to gain access to Mt. Bachelor's lifts, he objectively manifested his intent to regard the release agreement as binding in order to reap its benefits—thereby ratifying it.

However, although he concedes that he was "aware of the release" and "aware of the inherent risks of his sport[,]" Bagley further argues that he did not know that the agreement released Mt. Bachelor from claims related to its own negligence. Nor, he argues, did he know that he had the power to disaffirm the contract upon turning 18. We conclude that such knowledge was not a necessary prerequisite to ratification and, therefore, that Bagley's arguments as to his *subjective* understanding of both the release agreement and the law do not affect our determination that "no objectively reasonable juror could [have] return[ed] a verdict for" Bagley on the issue of ratification. ORCP 47 C.

Oregon subscribes to the "objective theory of contracts." *Kabil Developments Corp. v. Mignot*, 279 Or 151, 156-57, 566 P2d 505 (1977) (citation omitted); *Newton/Boldt v. Newton*, 192 Or App 386, 392, 86 P3d 49, *rev den*, 337 Or 84 (2004), *cert den*, 543 US 1173 (2005). Accordingly, although there is undisputed evidence in the record showing that, after reaching the age of majority, Bagley was exposed to language expressly disclaiming liability for negligence on the part of Mt. Bachelor,[6] his *subjective* understanding of

---

[6] For instance, as noted, the season pass that he was required to carry with him at all times expressly disclaimed liability for negligence and drew his attention to that language with the following heading: "READ THIS RELEASE AGREE-MENT[.]" (Capitalization in original.) Further, during his deposition testimony, Bagley confirmed that he had read signage posted prominently on the mountain that stated, as pertinent here, that

"[s]kiers and lift passengers who use tickets at this resort release and agree to hold harmless and indemnify Mt. Bachelor, Inc., its employees and agents from all claims for property damage, injury or death which he/she may suffer or for which he/she may be liable to others, arising out of the use of Mt. Bachelor's premises, *whether such claims are for negligence or any other theory of recovery, except for intentional misconduct.*"

(Emphasis added.)

that language and the terms of the release agreement is not relevant to the question of whether he ratified that agreement such that it could be enforced against him. *See, e.g., NW Pac. Indem. v. Junction City Water Dist.*, 295 Or 553, 557 n 4, 668 P2d 1206 (1983), *modified on other grounds*, 296 Or 365, 677 P2d 671 (1984) ("[F]ailure to read an instrument is not a defense to enforcement.").

We similarly reject Bagley's argument regarding his lack of knowledge of the power to disaffirm the release agreement upon reaching the age of majority. In raising that issue, Bagley notes that, "[i]n *some states*, the former infant's knowledge, or lack thereof, of his right to disaffirm a contract *may be taken into consideration*" in assessing whether there has been a ratification or disaffirmance. (Emphases added.) However, we have previously stated that "[i]gnorance of the law is not a basis for *not* enforcing a contract." *Shea v. Begley*, 94 Or App 554, 558 n 3, 766 P2d 418 (1988), *rev den*, 307 Or 514 (1989) (citation omitted; emphasis added); *see also Walcutt v. Inform Graphics, Inc.*, 109 Or App 148, 152, 817 P2d 1353 (1991), *rev den*, 312 Or 589 (1992) (the plaintiff was not entitled to avoid contract due to her and her counsel's "failure to take reasonable measures to inform themselves about her affairs"). Moreover, as Mt. Bachelor correctly points out, Bagley's argument is drawn from the minority view among other jurisdictions. *See* Lord, 5 *Williston on Contracts* § 9:17 at 175-77 (former minor's ignorance of legal defense of infancy treated as irrelevant in a majority of those jurisdictions that have considered the issue). As aptly stated by the Pennsylvania Supreme Court,

> "[t]o require that one must have knowledge of a right to disaffirm in order to make an effective ratification of a voidable contract made in infancy would be inconsistent with the well-established rule that failure to disaffirm such contract within a reasonable time after coming of age terminates the privilege of disaffirmance."

*Campbell v. Sears, Roebuck & Co.*, 307 Pa 365, 371, 161 A 310, 312 (1932).

In short, both of Bagley's ancillary arguments are inconsistent with the objective theory of contracts to which Oregon adheres; we look to the parties' objective conduct,

and, here, after reaching the age of majority, Bagley objectively manifested his intent to let the contract stand because he "wanted to snowboard[.]"

As noted, in his second assignment of error, Bagley asserts that the release agreement was void as contrary to public policy—focusing primarily on the respective bargaining power of the parties and an asserted "public interest [in] protecting a large number of business invitees, including [Bagley], from the negligence of ski area operators."[7] (Some capitalization omitted.) In evaluating whether a contract disclaiming liability for negligence is contrary to public policy, we assess the language of the agreement under the circumstances in order to determine whether it violates public policy "as applied" to the facts of the particular case. *Harmon v. Mt. Hood Meadows Ltd.*, 146 Or App 215, 217-18, 222-24, 932 P2d 92 (1997) (upholding release agreement disclaiming "any and all liability (including claims based upon negligence) for damage or injury" because the plaintiff's action pertained only to ordinary negligence and therefore did not implicate the release's potential coverage of recklessness or intentional misconduct (capitalization and boldface omitted)). Specifically, we stated in *Harmon* that

> "[t]he question of whether a contract provision is unenforceable as against some general, uncodified public policy must be determined on an 'as applied' basis. * * * [A] party seeking to avoid contractual responsibility must demonstrate that enforcement of the contractual provision *as to him or her* will offend public policy. *That is so regardless of whether enforcement of the same contractual provision against other parties in other circumstances would violate public policy.*"

*Id.* at 222 (emphases added); *see generally Young v. Mobil Oil Corp.*, 85 Or App 64, 69, 735 P2d 654 (1987) ("Oregon requires that a public policy be clear and 'overpowering' before a court will interfere with the parties' freedom to contract on the ground of public policy." (Citation omitted.)).

---

[7] We assume without deciding that the "void as contrary to public policy" doctrine pertaining to this type of case has not been superseded by later-evolved principles concerning substantive unconscionability. *See Restatement* § 208 comment a (unconscionability analysis generally "overlaps" with public-policy analysis).

Again, the release agreement provided, as pertinent here:

"RELEASE AND INDEMNITY AGREEMENT

"IN CONSIDERATION OF THE USE OF A MT. BACHELOR PASS AND/OR MT. BACHELOR'S PREMISES, I/WE AGREE TO RELEASE AND INDEMNIFY MT. BACHELOR, INC., ITS OFFICERS AND DIRECTORS, OWNERS, AGENTS, LANDOWNERS, AFFILIATED COMPANIES, AND EMPLOYEES (HEREIN-AFTER 'MT. BACHELOR, INC.') FROM ANY AND ALL CLAIMS FOR PROPERTY DAMAGE, INJURY, OR DEATH WHICH I/WE MAY SUFFER OR FOR WHICH I/WE MAY BE LIABLE TO OTHERS, IN ANY WAY CONNECTED WITH SKIING, SNOWBOARDING, OR SNOWRIDING. *THIS RELEASE AND INDEMNITY AGREEMENT SHALL APPLY TO ANY CLAIM EVEN IF CAUSED BY NEGLIGENCE. THE ONLY CLAIMS NOT RELEASED ARE THOSE BASED UPON INTENTIONAL MISCONDUCT.*"

(Underscoring and capitalization in original; emphasis added.) Although that exculpatory language expressly excludes intentional misconduct from its purview, the same cannot be said with respect to gross negligence or recklessness. However, applying *Harmon*, because Bagley alleges only ordinary negligence, the failure to expressly exclude gross negligence or recklessness does not render the agreement contrary to public policy "as applied" to the negligence claim in this case. 146 Or App at 222.

Further, in assessing the language of the agreement, our decision in *Steele v. Mt. Hood Meadows Oregon, Ltd.*, 159 Or App 272, 974 P2d 794, *rev den*, 329 Or 10 (1999), provides substantial guidance. There, the plaintiff in a wrongful death action brought against a ski resort argued that the trial court had erred in granting summary judgment for the ski resort in part because "the terms of the release [were] ambiguous." *Id.* at 276. We concluded that the agreement was ambiguous and stated that, "[w]hen one party seeks to contract away liability for its own negligence in advance of any harm, the intent to do so must be 'clearly and unequivocally expressed.'" *Id.* (quoting *Estey v. MacKenzie Engineering Inc.*, 324 Or 372, 376, 927 P2d 86 (1996)). We further elaborated:

"In determining whether a contract provision meets that standard, the court has considered both the language of the contract and the possibility of a harsh or inequitable result that would fall on one party if the other were immunized from the consequences of its own negligence. *The latter inquiry turns on the nature of the parties' obligations and the expectations under the contract.*"

*Id.* (citations and internal quotation marks omitted; emphasis added).

We conclude that the release agreement's language "clearly and unequivocally" expressed Mt. Bachelor's intent to disclaim liability for negligence. In reaching that conclusion, considering "the nature of the parties' obligations and the expectations under the contract[,]" *id.*, we note that Bagley admittedly understood that he was engaged in an inherently dangerous activity and that the agreement not only disclaimed liability for negligence but specifically stated that the "only" claims not released were those for intentional misconduct. Unlike the ambiguous release agreement in *Steele*, the above-quoted language expressly referred to negligence and was positioned prominently at the beginning of the release agreement; it was not obscured by unrelated provisions. *See id.* at 274-75 (exculpatory provision obscured by, *inter alia*, provision addressing skier's duty to report injuries to the ski resort's medical clinic). Indeed, we are hard-pressed to envision a more unambiguous expression of "the expectations under the contract"—namely, that in exchange for the right to use Mt. Bachelor's facilities to participate in an inherently dangerous activity, Bagley was to release Mt. Bachelor from all claims related to anything other than intentional misconduct (including, of course, negligence).

Moreover, we have previously emphasized that a release agreement disclaiming liability for negligence does not necessarily offend public policy where it pertains exclusively to "recreational activities," and, most prominently, where the business seeking to relieve itself of such liability does "not provide an essential public service[.]" *Mann v. Wetter*, 100 Or App 184, 187, 187 n 1, 785 P2d 1064, *rev den*, 309 Or 645 (1990) ("[T]here are no public policy considerations that prevent a diving school from limiting liability for its own negligence. The diving school does not provide

an essential public service[.]"). A ski resort, like a diving school, primarily offers "recreational activities" (with possible exceptions that do not apply here, *e.g.*, training for search-and-rescue personnel) and does not provide an "essential public service[.]" *Id.*

Thus, bearing in mind the principles set forth in *Mann* and the recreational context of this particular case,[8] because the release agreement "clearly and unequivocally" disclaimed liability for negligence, and because Bagley's claims relate only to ordinary negligence, under Oregon law the agreement was not contrary to public policy "as applied" to Bagley's action. *Steele*, 159 Or App at 276; *Harmon*, 146 Or App at 222.

Finally, we reject Bagley's third assignment of error, in which, as noted, he asserts that the release agreement was both procedurally and substantively unconscionable. At the outset, we emphasize the substantive rigor historically applied by Oregon courts in assessing claims of unconscionability:

> "'[T]he doctrine of unconscionability does not relieve parties from all unfavorable terms that result from the parties' respective bargaining positions; it relieves them from terms that are *unreasonably* favorable to the party with greater bargaining power. Oregon courts have been reluctant to disturb agreements between parties on the basis of unconscionability, even when those parties do not come to the bargaining table with equal power. In those rare instances in which our courts have declared contractual provisions unconscionable, there existed serious procedural and substantive unfairness.'"

*Hatkoff v. Portland Adventist Medical Center*, 252 Or App 210, 217, 287 P3d 1113 (2012) (quoting *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or App 610, 626-27, 156 P3d 156 (2007)) (emphasis in *Motsinger*). Further, "each case is decided on its own unique facts[,]" *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or App 553, 567, 152 P3d 940 (2007), taking into account both the terms of the contract and the circumstances existing when the contract was signed.

---

[8] Regarding that recreational context, we further note that the legislature has enacted statutes indemnifying landowners from liability in connection with "use of the land for recreational purposes[.]" ORS 105.682; *see* ORS 105.672 - 105.696. Accordingly, we add that, as a general matter, it would be counterintuitive to hold that a contract with the same operative effect as that statutory scheme is void as contrary to public policy.

In assessing Bagley's claim of procedural unconscionability, we focus on "the conditions of contract formation" and look to "two factors: oppression and surprise." *Id.* at 566-67 (citation and internal quotation marks omitted). More specifically, "[o]ppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the terms." *Id.* at 566 (citation and internal quotation marks omitted). Bagley addresses only the former, advancing a generalized argument that the agreement "was a contract of adhesion and there was a disparity in bargaining power." (Some capitalization omitted.)

As noted, we do not find the release agreement procedurally unconscionable under these circumstances. Although the parties indeed came to the bargaining table with unequal power insofar as Mt. Bachelor required that the release be signed in order to allow Bagley to purchase a season pass, we have, albeit in *dictum* and in the context of addressing public-policy arguments, suggested that standard-form release agreements in the context of recreational activities are not impermissibly adhesive. *See Harmon*, 146 Or App at 219 n 4 (citing cases from other jurisdictions and noting their holdings "that exculpatory provisions in ski-related form agreements were not impermissibly adhesive"); *Mann*, 100 Or App at 187-88 (noting that "customers have a multitude of alternatives" in dealing with providers of "non-essential service[s,]" even where such providers hold an "economic advantage").[9] Although we limit our holding to these "unique facts," we rely in part on those principles in addressing both "oppression" and "surprise" (as well as substantive unconscionability, as set forth below).

---

[9] Many other states, as well as federal courts, have, as Mt. Bachelor points out, "reached the same conclusion." *See, e.g., Chepkevich v. Hidden Valley Resort, L. P.*, 607 Pa 1, 29, 2 A3d 1174, 1191 (2010) (noting that, in the recreational context, "[t]he signer is a free agent who can simply walk away without signing the release and participating in the activity, and thus the contract signed under such circumstances is not unconscionable"); *Silva v. Mt. Bachelor, Inc.*, No CV 06-6330-AA, *2 (D Or July 21, 2008) ("[T]he release from liability is not invalid as a contract of adhesion, because [the] plaintiff voluntarily chose to ski at Mt. Bachelor and the ski resort does not provide essential public services."); *Grbac v. Reading Fair Co., Inc.*, 521 F Supp 1351, 1355 (WD Pa 1981), *aff'd*, 688 F2d 215 (3d Cir 1982) (stock-car racing company's standard-form release provision not adhesionary).

Here, with respect to "oppression," Bagley was free to choose not to snowboard at Mt. Bachelor, was less than two weeks short of the age of majority when he signed the agreement, was an experienced snowboarder who had previously signed release agreements required by at least two other ski resorts, had signed a release agreement in obtaining a season pass at Mt. Bachelor during each of the preceding three years, and was accompanied by his father (who, as noted, signed a nearly identical agreement disclaiming liability for negligence). Each of those facts contributes to our conclusion that, notwithstanding the parties' unequal bargaining power, the circumstances of contract formation were not impermissibly oppressive. Bagley and his father were presented with a "meaningful choice[,]" *Vasquez-Lopez*, 210 Or App at 566, particularly given that, as noted, snowboarding is a recreational activity and Bagley could have simply declined to sign the release without being denied access to an essential public service.

With respect to "surprise," as evidenced by the unambiguous language of the release agreement, and particularly given its additional clarification after disclaiming liability for negligence ("THE ONLY CLAIMS NOT RELEASED ARE THOSE BASED UPON INTENTIONAL MISCONDUCT"), this was not a situation where the "terms of the bargain [were] hidden" by Mt. Bachelor. *Id*. To the contrary, the above-quoted paragraph pertaining to the skier's release of claims, including claims for negligence, appeared at the beginning of the release agreement and was highlighted by a centered and underlined introductory heading drawing the skier's attention to the fact that he or she was signing a release ("<u>RELEASE AND INDEMNITY AGREEMENT</u>"). On those facts, we find no indication of surprise and, coupled with our conclusion above as to oppression, cannot say that the release agreement was procedurally unconscionable.

In further arguing that the release agreement was substantively unconscionable, Bagley asserts that "[t]he Release term of the contract in question is unreasonably favorable to [Mt. Bachelor], the drafter of the contract and more powerful party." Further, Bagley argues, the terms of the release "unconscionably shift[] the burden to protect [skiers] from [Mt. Bachelor's] negligent behavior to the public that it invites upon its premises, including [Bagley]." In

assessing a contract for substantive unconscionability, we focus on the terms of the contract itself in light of the circumstances of its formation; ultimately, "[t]he substantive fairness of the challenged terms" is the "essential issue." *Carey v. Lincoln Loan Co.*, 203 Or App 399, 423, 125 P3d 814 (2005), *aff'd on other grounds*, 342 Or 530, 157 P3d 775 (2007); *see Vasquez-Lopez*, 210 Or App at 566-69.

On these facts, the provision in the release agreement disclaiming liability for negligence was not "unreasonably" favorable to Mt. Bachelor. *Carey*, 203 Or App at 422. Indeed, the principal Oregon case touching on the issue upheld a provision—albeit on an "as applied" basis in the context of that particular plaintiff's public-policy argument—that not only disclaimed liability for negligence in connection with skiing but for *"any and all liability"* (presumably including liability related to gross negligence or intentional misconduct on the part of the ski resort). *Harmon*, 146 Or App at 217-22 (emphasis added). Moreover, as noted, in *Harmon* we specifically cited cases from other jurisdictions "holding that exculpatory provisions in ski-related form agreements were not impermissibly adhesive." *Id.* at 219 n 4. Returning to the overarching notion that the terms at issue must be read in light of their recreational context, in one of those cases, the New Jersey Superior Court aptly reasoned as follows:

> "When an individual enters a ski shop to buy ski equipment, s/he does not have a *need* for those goods and services, merely a desire. Should the seller demand exculpation as a condition for the sale of the equipment, the purchaser is free to walk away. This is not so with the consumer of automobile insurance, or the individual who cannot find a place to live during a housing shortage. Unlike the skier, these individuals must face an inability to use their automobile, or the prospect of becoming homeless, if they are not willing to sign on the dotted line and exculpate the provider. The skier merely faces the prospect of a ski-less weekend."

*McBride v. Minstar, Inc.*, 283 NJ Super 471, 491, 662 A2d 592, 602 (NJ Super Ct Law Div 1994), *aff'd sub nom McBride v. Raichle Molitor, USA*, 283 NJ Super 422, 662 A2d 567 (NJ Super Ct App Div), *rev den*, 143 NJ 319, 670 A2d 1061 (1995) (emphasis in original). As noted, similar release agreements

in the context of recreational activities have been upheld (including against claims of unconscionability) in a number of other jurisdictions. *See* 258 Or App at 407 n 9. Finally, ORS 105.682 establishes a public policy in favor of indemnification of landowners where the land is used for, *inter alia*, recreational purposes. We fail to see how a private contract to the same effect is substantively unfair as a matter of law.

Accordingly, given existing case law and the aforementioned substantive rigor that we apply in assessing claims of unconscionability, *see Hatkoff*, 252 Or App at 217, we conclude that the terms of Mt. Bachelor's release were not substantively unconscionable under these circumstances. That is, the inclusion of the release provision did not constitute one of "those rare instances" where the terms of the contract were so *"unreasonably* favorable" to Mt. Bachelor that they were unconscionable. *Id.* (emphasis in original); *see also Restatement* § 208 comment b (a contract has traditionally been held unconscionable only where "it was such as no man in his senses and not under delusion would make" (citations and internal quotation marks omitted)).

In sum, we conclude that Bagley ratified the release agreement prior to the date of injury, nullifying his power to later disaffirm it (whether by notice, filing suit, or pleading infancy), and that the agreement—coupled with the language printed on the season pass and signage at the lift terminals—was sufficiently clear as to its application to claims for negligence. We further conclude that Bagley's lack of knowledge regarding the scope of the unambiguous agreement did not preclude summary judgment, nor did his lack of knowledge of the power to disaffirm it upon reaching the age of majority. As to whether the release agreement was valid in the first instance, we conclude that, *as applied*, the release agreement was not contrary to public policy. Nor was the agreement substantively or procedurally unconscionable. Accordingly, no genuine issue of material fact exists as to Mt. Bachelor's affirmative defense of release, and the trial court did not err in granting summary judgment for Mt. Bachelor and denying partial summary judgment to Bagley on that basis.

Affirmed.