Argued and submitted November 4, 2014, reversed and remanded
March 18, 2015

Tabitha BECKER,
*Plaintiff-Appellant,*

*v.*

HOODOO SKI BOWL DEVELOPERS, INC.,
an Oregon corporation,
dba Hoodoo Ski Area,
*Defendant-Respondent.*

Linn County Circuit Court
112557; A154563

346 P3d 620

Kathryn H. Clarke argued the cause for appellant. With her on the briefs was William A. Gaylord.

Andrew C. Balyeat argued the cause for respondent. With him on the brief was Balyeat & Eager, LLP.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

Plaintiff Becker, who was injured by a chair lift at Hoodoo's ski area, brought this negligence action against defendant Hoodoo Ski Bowl Developers, Inc. (Hoodoo). Hoodoo filed a motion for summary judgment, arguing that it was entitled to the affirmative defense of release, and Becker filed a cross-motion for partial summary judgment, arguing that the release was unenforceable because it violated public policy and was procedurally and substantively unconscionable. The trial court granted Hoodoo's motion for summary judgment, denied Becker's cross-motion for partial summary judgment, and entered a judgment in favor of Hoodoo. Becker now appeals that judgment, renewing her argument that the release was unenforceable because it violated public policy and was procedurally and substantively unconscionable. For the reasons that follow, we reverse and remand.

We review a trial court's rulings on summary judgment to determine whether "there is no genuine issue as to any material fact" and whether "the moving party is entitled to prevail as a matter of law." ORCP 47 C. "We view the historical facts set out in the summary judgment record, along with all reasonable inferences that may be drawn from them, in the light most favorable to the nonmoving party—plaintiff on defendant's motion for summary judgment, and defendant on plaintiff's cross-motion." *Bagley v. Mt. Bachelor, Inc.*, 356 Or 543, 545, 340 P3d 27 (2014) (*Bagley II*).

Becker's husband purchased a lift ticket for Becker to ski at Hoodoo's ski area. An anticipatory release, along with Hoodoo's logo, appeared on the face of the lift ticket. The release read as follows:

"Release Agreement

"'The purchaser or user of this ticket understands that skiing can be hazardous and accepts and assumes the inherent risks of skiing including but not limited to changing weather conditions, variations or steepness in terrain, snow or ice conditions, surface or subsurface conditions, bare sports [sic], creeks and gullies, forest growth, rocks, stumps, lift towers and other structures and their

components, *collisions with chairlifts*, snow grooming equipment and other skiers, and a skier's failure to ski within the skier[']s own ability. Always ski in control.'

"'THE USER OF THIS TICKET HEREBY RELEASES HOODOO SKI BOWL DEVELOPERS, INC., d.b.a. HOODOO SKI AREA AND ITS AGENTS FROM ANY AND ALL CLAIMS AND LIABILITIES ARISING OUT OF OR IN CONNECTION WITH THE USE OF THIS TICKET INCLUDING BUT NOT LIMITED TO SKIING ACTIVITIES AND *LOADING AND UNLOADING FROM LIFTS. THIS RELEASE INCLUDES CLAIMS BASED UPON NEGLIGENCE.*[']

"The holder of this ticket as condition of being permitted to use the facilities of the area agrees to assume all risk of personal injury or loss of or damage to property and that the management is not responsible for ticket if lost or stolen. This ticket may be revoked without refund at any time for misconduct of or nuisance caused by the holder[.]

"NO REFUNDS NOT TRANSFERABLE"

(Capitalization in original; emphases added.) The release occupied approximately one-half of the face of the ticket, and the logo occupied the other half.[1] Becker did not notice or read the release.

A sign was also posted in Hoodoo's ski area. The sign provided, in part, that

"[a] ski area operator shall be notified of any injury to a skier by registered or certified mail within 180 days after the injury or within 180 days after the skier discovers or reasonably should have discovered, such injury. ORS 30.980(1). Failure to give notice as required by this section bars a claim for injuries or wrongful death. ORS 30.980(4).

"The above notice is required by Oregon Law and is presented in a manner reasonably calculated to inform. It is in addition to other notices and specific release agreements you may have entered into with Ski Area Management."

---

[1] The lift ticket was "designed to have its backing removed, and to then be folded over a metal wicket so that the backs of each half stick together resulting in the Hoodoo logo being visible on one side and the release agreement visible on the other side." That design allowed the user of the ticket to remove the backing and attach "the wicket to his or her clothing before using the ski lifts."

On the day in question, Becker used a chair lift several times without incident. While Becker was waiting to again board the lift, a chair came around to the boarding area with its seat bottom upright. Becker "tried to turn her skis and go off to the right[,]" but the chair struck Becker, and she was injured.[2]

Becker subsequently filed this action, alleging that Hoodoo was negligent in its operation of the chair lift and that its negligence caused her injuries. Hoodoo filed a motion for summary judgment, arguing that it was entitled to the affirmative defense of release based on the release that was printed on Becker's lift ticket. Becker filed a cross-motion for partial summary judgment, arguing that the release violated public policy and was procedurally and substantively unconscionable. After a hearing on those motions, the trial court ruled in favor of Hoodoo as noted above, and Becker now appeals.

On appeal, Becker contends that the trial court erred in granting Hoodoo's motion for summary judgment, denying her cross-motion for partial summary judgment, and entering a judgment in favor of Hoodoo, again arguing that the release was unenforceable because it violated public policy and was procedurally and substantively unconscionable.[3] Hoodoo responds that the trial court did not err

---

[2] Becker's complaint alleges, in part, that Becker

"was struck, lifted, run over, dragged and dropped by a moving chair lift, causing tearing, twisting, wrenching, bruising and abrading to the bones, muscles, ligaments, tendons, joints and associated soft tissues of her right arm and shoulder and both lower extremities, from all of which she suffered a dislocated right shoulder and associated brachial plexus injury, with radiculopathy and nerve pain and numbness into the fingers of her right hand, requiring her to undergo surgery and to keep her right arm in a sling, resulting in a temporary partially frozen shoulder, and a permanent partial disability of her shoulder and in continuing and intermittent pain, weakness, and reduced range of motion of her right arm; a low-back injury, with sciatic pain down her left leg; injuries to both knees, with parasthesia into the three middle toes of the left foot; and left heel and ankle pain and instability; and exacerbation of a pre-existing plantar fasciitis in her left foot. As a further result of these injuries, plaintiff is now at risk of developing arthritis in the injured areas as she ages."

[3] Becker also argues that "[t]here was no agreement reached under the circumstances of this case." However, we need not decide that issue because, assuming without deciding that an agreement was reached in this case, enforcement of such an agreement would be unconscionable, as we conclude below.

because the release at issue is not contrary to public policy and is not unconscionable. In their appellate briefs, both parties cite *Bagley v. Mt. Bachelor, Inc.*, 258 Or App 390, 310 P3d 692 (2013) (*Bagley I*), *rev'd*, 356 Or 543, 340 P3d 27 (2014)—a case that was decided by this court after the parties argued their motions to the trial court and after the trial court entered judgment in favor of Hoodoo.

The plaintiff in *Bagley I*, who had signed a release agreement[4] when he purchased a season ski pass from the defendant Mt. Bachelor, Inc., was injured while snowboarding over a jump in the defendant's "'terrain park'" and brought an action alleging negligence in the design, construction, maintenance, or inspection of that jump. *Id.* at

---

[4] The release agreement at issue in *Bagley*, which was signed by the plaintiff, read, in part:

"'In consideration of the use of a Mt. Bachelor pass and/or Mt. Bachelor's premises, I/we agree to release and indemnify Mt. Bachelor, Inc., its officers and directors, owners, agents, landowners, affiliated companies, and employees (hereinafter 'Mt. Bachelor, Inc.') from any and all claims for property damage, injury, or death which I/we may suffer or for which I/we may be liable to others, in any way connected with skiing, snowboarding, or snowriding. This release and indemnity agreement shall apply to any claim even if caused by negligence. The only claims not released are those based upon intentional misconduct.

"'* * * * *

"'The undersigned(s) have carefully read and understand this agreement and all of its terms on both sides of this document. This includes, but is not limited to, the duties of skiers, snowboarders, or snowriders. The undersigned(s) understand that this document is an agreement of release and indemnity which will prevent the under-signed(s) or the undersigneds' estate from recovering damages from Mt. Bachelor, Inc. in the event of death or injury to person or property. The undersigned(s), nevertheless, enter into this agreement freely and voluntarily and agree it is binding on the undersigned(s) and the undersigneds' heirs and legal representatives.

"'By my/our signature(s) below, I/we agree that this release and indemnity agreement will remain in full force and effect and I will be bound by its terms throughout this season and all subsequent seasons for which I/we renew this season pass.

"'See reverse side of this sheet * * * for duties of skiers, snowboarders, or snow riders which you must observe.'"

*Bagley I*, 258 Or App at 392-93. (Capitalization omitted.) The "crux of the release agreement was also printed" on the plaintiff's ski pass. *Id.* at 394.

In addition, a sign was posted at each of the defendant's ski lift terminals, providing, in part, that "'YOUR TICKET IS A RELEASE'" and advising members of the public not to purchase tickets without agreeing to be bound by the terms and conditions of the release. *Id.* at 395 (capitalization in original).

392. There, as here, the defendant moved for summary judgment based on the affirmative defense of release, and the plaintiff argued that the release was contrary to public policy and unconscionable. After analyzing the facts in *Bagley I*, this court concluded that the release in that case was not contrary to public policy and that the terms of the release were neither procedurally nor substantively unconscionable. *Id.* at 410.

However, after the parties in this case briefed and argued this case to us, the Oregon Supreme Court reversed our decision in *Bagley I. See Bagley II*, 356 Or 543. In so doing, the court explained that it would, "for the sake of convenience—if not doctrinal convergence—*** address the parties' public policy arguments in the context of [its] analysis of whether, in the particular circumstances of [that] case, enforcement of the release would be unconscionable." *Id.* at 554. The court then set forth the "procedural factors" and "substantive considerations" that it gleaned from its prior decisions involving unconscionable contracts, stating:

> "We glean from those decisions that relevant *procedural factors* in the determination of whether enforcement of an anticipatory release would violate public policy or be unconscionable include whether the release was conspicuous and unambiguous; whether there was a substantial disparity in the parties' bargaining power; whether the contract was offered on a take-it-or-leave-it basis; and whether the contract involved a consumer transaction. Relevant *substantive considerations* include whether enforcement of the release would cause a harsh or inequitable result to befall the releasing party; whether the releasee serves an important public interest or function; and whether the release purported to disclaim liability for more serious misconduct than ordinary negligence. Nothing in our previous decisions suggests that any single factor takes precedence over the others or that the listed factors are exclusive. Rather, they indicate that a determination whether enforcement of an anticipatory release would violate public policy or be unconscionable must be based on the totality of the circumstances of a particular transaction. The analysis in that regard is guided, but not limited, by the factors that this court previously has identified; it is also informed by any

other considerations that may be relevant, including societal expectations."

*Id.* at 560 (emphases added).

The court then analyzed those factors and considerations as they pertained to the facts in that case. When analyzing the procedural factors, the court noted that one factor—whether the release was conspicuous and unambiguous—weighed in favor of enforcement, as the plaintiff did not contend that he was surprised by the terms of the release. *Id.* at 561. The court then stated that "[o]ther procedural factors * * * point[ed] in a different direction[,]" noting that this "was not an agreement between equals" as "[o]nly one party to the contract—defendant—was a commercial enterprise, and that party exercised its superior bargaining strength by requiring its patrons, including plaintiff, to sign an anticipatory release on a take-it-or-leave-it basis as a condition of using its facilities." *Id.* The court also noted that "plaintiff had no opportunity * * * to negotiate for different terms or pay an additional fee for protection against defendant's negligence." *Id.* at 562.

When analyzing the substantive considerations, the court stated that "the enforcement of the release would cause a harsh and inequitable result" to befall the plaintiff; that the "defendant's business operation [was] sufficiently tied to the public interest as to require the performance of its private duties to its patrons[;]" and that "the fact that plaintiff's claim [was] based on negligence rather than on more egregious conduct carries less weight than the other substantive factors[.]" *Id.* at 565-70. The court concluded by stating, "Because the factors favoring enforcement of the release are outweighed by the countervailing considerations that we have identified, we conclude that enforcement of the release at issue in this case would be unconscionable." *Id.* at 573.

The release here is materially indistinguishable from the release at issue in *Bagley*, and, therefore, under the analysis set forth by the Oregon Supreme Court in *Bagley II*, we conclude that enforcement of the release in this case would likewise be unconscionable. Accordingly, Hoodoo is not entitled to prevail on its affirmative defense of release,

and the trial court erred in granting Hoodoo's motion for summary judgment, denying Becker's cross-motion for partial summary judgment, and entering a judgment in favor of Hoodoo.

Reversed and remanded.